CASE 27—ACTION FOR AN INJUNCTION—OCT. 13.

# Knipper v. City of Covington.

APPEAL FROM KENTON CIRCUIT COURT..

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—LIMITATION OF POWER TO CREATE INDEBTED-NESS—SUBMISSION OF QUESTION TO VOTERS.

Held: Under Const., sec. 157, providing that no municipality shall be authorized to become indebted to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose;" and sec. 158, providing that municipalities shall not be authorized to incur indebtedness in excess of a certain limit, "unless, in case of emergency, the public health or safety should so require,"—a city, whether or not the limit prescribed by sec. 158 has been exceeded, and though an emergency exists, may not incur indebtedness in excess of the income and revenue provided for the year without the assent of two-thirds of the voters thereof.

M. H. McLEAN, ATTORNEY FOR APPELLANT.

The only question to be decided by this appeal is:—Can a city incur an indebtedness, in any one year in excess of the income and revenue, provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; notwithstanding the fact that there does

exist an emergency, and that the public health and safety of
the city, requires that such a debt be contracted? Our conten-
tion is that such a debt can not be contracted without a vote as
provided in section 157 of the Constitution. Ky. Constitution
secs. 157 & 158; Belknap v. City of Louisville, 99 Ky., 474.

F. J. HANLON, ATTORNEY FOR APPELLEE.

I submit that under secs. 157 and 158 of the Constitution, it
was manifestly the intention of the framers of the Constitution
to limit the creation of indebtedness by municipalities for all
purposes, excepting in the case of emergency, where the public
health and safety requires that such limitations should not ap-
ply. Such a case is the one at bar. The streets, alleys, and
catch-basins of the city are in deplorable condition, and a stench
in the nostrils of the city breeding disease and death, and they
are the cause of smallpox existing in the city for which condition
the city has been indicted, as shown by the record. Secs. 157
and 158, Ky. Constitution; secs. 3094, 3096, Ky. Stats; Beards v.
the city, 95 Ky., 239; City of Covington v. McKenna, 99 Ky., 508;
Debates of Con. Convention of 1890, Vol. 2 pp. 2131, 2886; Dillon
on Municipal Cor. Vol. 1 (4 ed.), sec. 1181; Bank v. Chillicothe,
7 Ohio Part 11, p. 31; City of Shelbyville v. Water & Light Co.,
16 Ky. Rep., 176; Hitchcock v. City of Galveston, 96 U. S. Rep.,
341; Belknap v. City of Louisville, 18 Ky. Rep., 213.

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—REVERS-
ING.

It is contended on this appeal that, if the public health
or safety required it, a city, notwithstanding the inhib-
itory language of section 157 of the Constitution, may be-
come indebted to an amount exceeding, in any year, the
income and revenue provided for such year, without the
assent of the voters. So much of that section as is per-
tinent reads as follows:

"Section 157. . . . No county, city, town, taxing dis-
ing district, or other municipality shall be authorized or
permitted to become indebted, in any manner or for any
purpose, to an amount exceeding, in any year, the income
and revenue provided for such year, without the assent

of two-thirds of the voters thereof, voting at an election to
be held for that purpose; and any indebtedness contract-
ed in violation of this section shall be void. Nor shall
such contract be enforceable by the person with whom
made; nor shall such municipality ever be authorized to
assume same."

Authority for the nullification of this section is sought
to be found in section 158 of the Constitution, which reads
as follows:

"Section 158. The respective cities, towns, counties,
taxing districts and municipalities shall not be authorized
or permitted to incur indebtedness to an amount, including
existing indebtedness, in the aggregate exceeding the fol-
lowing named maximum percentages on the value of the
taxable property therein, to be estimated by the assess-
ment next before the last assessment previous to the in
curring of the indebtedness, viz.: Cities of the first and
second classes, and of the third class having a population
exceeding fifteen thousand, ten per centum; cities of the
third class having a population of less than fifteen thou-
sand, and cities and towns of the fourth class, five per
centum; cities and towns of the fifth and sixth classes,
three per centum; and counties, taxing districts and other
municipalities, two per centum; provided, any city, town,
county, taxing district or other municipality may contract
an indebtedness in excess of such limitations when the
same has been authorized under laws in force prior to
the adoption of this Constitution, or when necessary for
the completion of any payment for a public improvement
undertaken and not completed and paid for at the time
of the adoption of the Constitution; and provided, further,
if, at the time of the adoption of this Constitution, the
aggregate indebtedness, bonded or floating, of any city,

town, county, taxing district or other municipality, in-
cluding that which it has been or may be authorized to con-
tract as herein provided, shall exceed the limit herein
prescribed, then no such city or town shall be authorized
or permitted to increase its indebtedness in an amount
exceeding two per centum, and no such county, taxing dis-
trict or other municipality, in an amount exceeding one
per centum, in the aggregate upon the value of the tax-
able property therein, to be ascertained as herein pro-
vided, until the aggregate of its indebtedness shall have
been reduced below the limit herein fixed, and thereafter
it shall not exceed the limit, unless, in case of emergency,
the public health or safety should so require. Nothing
herein shall prevent the issue of renewal bonds, or bonds
to fund the floating indebtedness of any city, town, county,
taxing district or other municipality."

It appears that the limit of the aggregate indebtedness
of the appellee city, as prescribed in section 158, has not
been reached, such indebtedness being yet within ten per
centum of the taxable property, and this limit will not
be exceeded even if the bonds sought to be validated be
issued. As the proviso in section 158, permitting an in-
crease beyond the limit fixed in that section should the
public health or safety so require, has in express terms
reference solely to instances where this limit has been
reached, and an emergency requires that there be an in-
crease beyond this limit, we can not conceive how the
section can possibly have any application to the present
case.

The first section in plain and unambiguous language, pro-
vides a barrier against any indebtedness for any purpose,
without a vote, beyond the revenues of the year. The
second section is not a grant of power beyond this, but im-

Knipper v. City of Covington.

poses an additional limitation on the creation of indebt-
edness in the aggregate. If a city has not reached the
limits provided in section 158, the section has no bearing
whatever in considering what indebtedness such a city may
create. The limitations of that section are simply not in
the way, and the question is to be considered as if the
section had never been adopted.

From the sections quoted, it would seem clear that, if
a city is overtaken with the necessity of increasing its
indebtedness in any year beyond its revenues for that year,
it may do so by obtaining the assent of the voters, as
provided in section 157; and it matters not for what "pur-
pose" the proposed indebtedness is needed, whether be-
cause of the public health or safety or what not, nor in
what "manner" it is sought to be imposed. A vote is de-
manded by the express terms of the law whenever an
indebtedness beyond revenues is to be created. And, if
the indebtedness is attempted to be created without the
vote, the Constitution pronounces the contract creating it
void. It can not be enforced, nor can the city ever be
authorized to assume such indebtedness. If, therefore, an
emergency in any city arises requiring such an increase,
"the assent of two-thirds of the voters therof voting at
an election to be held for that purpose" must be obtained
before the increase can be made.

This requirement is without regard to the question of
aggregate indebtedness. A city may be wholly out of debt,
still the requirement of section 157 is that no indebtedness
for any purpose shall be created in any manner which is
in excess of the annual revenues, except by the assent
of the people. Again, a city may be in debt even beyond the
limits fixed in section 158, still the requirement is the
same—the city must live within its means, unless the

people. direct otherwise. But, there being no limitation in section 157 on the aggregate indebtedness, a city might, so far as this section is concerned, vote a large debt on itself year after year; and this very evil had proven disastrous in former times. Therefore the framers of the Constitution placed a limit on aggregate indebtedness, beyond which even the people themselves could not go. This limit was of necessity an arbitrary one, and it was argued that possibly some emergency might arise when the public health and safety would require the creation of a debt which, together with the other indebtedness, would exceed the limit. Therefore it is provided in section 158 that the limit therein fixed shall not be exceeded "unless, in case of emergency, the public health or safety should so require," in which event the necessary implication is, the limit may be exceeded by the creation of an additional debt. Now, it may be entirely possible to make this additional debt out of the revenue provided for and to be collected during the ensuing year. But, if the additional debt can not be so met, then the indebtedness, being in excess of the revenues for the year, must be authorized by a vote, as required by section 157.

Each section provides a limitation on the power to create indebtedness. Neither of them is a grant of power. No such grant was then necessary, for the power to create indebtedness was therefore not specifically limited. When an emergency arises such as is named in section 158, then certain limits fixed in that section are removed. But section 157 is still in force, and, while the emergency indebtedness may be incurred, the provisions of section 157 still provide how it may be incurred; that is, by a vote of the people. If such indebtedness is in excess of the revenues for the year, and without that vote, if there is no in-

Knipper v. City of Covington.

debtedness beyond the revenues, there is no conflict be-
tween them. We therefore must give each section full ef-
fect, and apply the limitation provided for in each of them.

When considering the indebtedness which the city is au-
thorized to create by a vote of the people, as provided in
section 157, we are not to disregard the
vided for in section 158. And while the
to create an unlimited indebtedness, so far as section 157
is concerned, it does not follow that we are to shut our
eyes to any further limitation elsewhere provided. We
must read section 158 into and along with section 157 to
see how far and to what extent the people may vote a
debt on themselves. So, in reading section 158, while we
find certain limits beyond which, for ordinary purposes,
the city can not go, yet for certain purposes we find, in ef-
fect, no limits at all. In other words, there is no limit
or restriction of the amount to which a city may become
indebted under certain emergencies. Practically, as to an
indebtedness for certain purposes, that section (158) is
abolished. The way is entirely open for the imposition of
any amount of indebtedness. But section 157 is to be
read into and along with section 158, and the manner of
creating an indebtedness "for any purpose" must be as pre-
scribed in section 157.

The purpose of the indebtedness in the case at bar gets
us from under the burdens and limitations of section 158,
but the manner of creating any indebtedness beyond the
revenues must be observed, as presented elsewhere in the
Constitution, viz., in section 157. This is the only way to
give force and effect to the instrument as a whole. The
plea that this construction may result in disaster to a city
by reason of some great emergency, which could not be

met at once, because elections are held only once in a year, is no more than saying that we should disregard the Constitution because it is inconvenient to obey it. At any rate, in the present case, no great delay can result, as the vote can be taken at the coming November election. The judgment upholding the right of the city to issue the bonds in question is reversed, with directions to perpetuate the injunction as prayed.