CASE 31.—ACTION BY THE  COMMONWEALTH AGAINST
          THE FISCAL COURT OF FRANKLIN COUNTY TO
          LEVY A TAX AND ERECT A COURTHOUSE.—
          March 25, 1909.

# Fiscal Court of Franklin County v. Common-wealth.

Appeal from Franklin Circuit Court.

R. L. Stout, Circuit Judge.

Judgment for the Commonwealth and defendant
appeals.—Reversed.

Counties—Limitation of Amount of Indebtedness—Constitutional
    Provisions.—Under Const. sections 157, 158, limiting the tax
    rate of counties, prohibiting counties from becoming indebted
    in excess of the income without the assent of two-thirds of
    the voters thereof at an election, and providing that counties
    shall not incur indebtedness in excess of a specified limit,
    "unless in case of  emergency the public health or safety
    shall so require, a  county indebted up to the constitutional
    limit and having a courthouse, which may be used without
    endangering the public health or safety, cannot incur fur-
    ther indebtedness for the construction of a new courthouse,

though the community has outgrown the existing courthouse, and though it may need repairs, notwithstanding Act. Va. 1751 requiring the fiscal court to maintain within each county one good and convenient courthouse.

JAS. H. POLSGROVE for appellant.

WILLIAM LINDSAY, JAS. A. SCOTT and T. L. EDELEN for Commonwealth.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

At its January term, 1904, the grand jury made to the Franklin circuit court the following report: "The courthouse is not a building such as the courts and officers of this county, with the increasing business of the courts and the county, are entitled to. This grand jury has no recommendations to make in the matter, believing that the proper steps will be taken to rebuild the old, or build a new one, when the courthouse fund is large enough. This, as we understand, is now about $8,500.00, with the probable increase of $3,000.00 when settlement is made with the sheriff." At the January term, 1905, it made the following report: "The county courthouse is in most wretched condition, and now that a new State Capitol is to be erected here this county should make arrangements as soon as possible to do away with the old bat roost and erect in its stead a sightly and commodious building. We desire to compliment the county judge and magistrates and thank them for having begun the accumulation of a fund for that purpose." At the April term, 1905, and at the September term, 1906, it made a similar report. At the January term, 1907, it made this report: "This grand jury desires to call the attention of the fiscal court of the county and citizens generally once more to the condition of the county

courthouse. It is a jeopardy to the health of those who of necessity must be there in discharge of official duty. The jury rooms are unfit for use, the court-room is in bad condition, the drafts and cross drafts, the floor so rotten that it has been known to break through beneath the tread and chair legs pushed through it. The whole place is in such condition as to be uncomfortable, unhealthy, and dangerous. Officers of court, jurors, lawyers, litigants, witnesses, all who are forced to attend here, as well as the public generally, are entitled to a better place in which to transact public business. We believe the county judge is trying to bring about the erection of a new courthouse. We feel that his task is a hard one, and we trust that he will have the encouragement and assistance of all the people, but this matter should not longer be deferred. This improvement is sorely needed now, and we ask your honor to take such action as under the law you deem you have the right to take to hasten the day when the desired end may be accomplished." At the January term, 1909, a committee appointed by the bar for that purpose, upon the reports made by the grand jury, obtained a rule against the fiscal court to show cause why it did not levy a tax to build a courthouse. The fiscal court reported, in substance, that the present bonded indebtedness of Franklin county is $291,000, no part of which will mature until July 1, 1913; that there is now on deposit in bank to the credit of a fund which has been established by order of the fiscal court the sum of $23,000; but that sum would not be sufficient to pay for the construction of an adequate county courthouse. The report, after referring to sections 157 and 158 of the Constitution, concludes with these words: "Respondents further say that the total as-

sessed valuation of taxable property in Franklin county for the year 1909 is $7,499,177; that the total amount of revenue that can be derived from said valuation would not exceed $50,000; that the sum of at least $40,000 will be absolutely necessary for the payment of interest on the public debt and of the general expenses of the county for said year; that section 157 of the Constitution prohibits the levying of tax in any one year in excess of 50 cents on each $100 of the taxable property of the county. It also prohibits the incurring of an indebtedness in any manner or for any purpose to an amount exceeding, in any year, the income and revenue provided for such year, unless submitted to a vote of the people, and as section 158 limits the fiscal court to the incurring of a debt, under any circumstances, in excess of 3 per centum, a vote would be futile, and this court is unable to comply with your honor's order. Your respondents say that $190,000 of the bonded debt of the county was created and existed prior to the adoption of the present Constitution. The remainder of said bonded debt has been incurred since the adoption of said Constitution. Wherefore it asks that the rule awarded herein be dismissed." The circuit court sustained a demurrer to the response, and, the fiscal court failing to plead further, made the rule absolute directing the fiscal court to levy a tax and to erect a courthouse suitable for the needs of the people of Franklin county. The fiscal court appeals.

Sections 157 and 158 of the Constitution as far as material to the question here before us are as follows:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein,

viz.: * * * For counties and taxing districts, fifty cents on the hundred dollars; unless it should be necessary to enable such * * * county or taxing district to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of the Constitution. No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void.'' Section 157.

''The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: * * * Counties, taxing districts and other municipalities, two per centum; provided, any * * * county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: and provided further, if at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district, or other municipality, including

that which it has been or may be author-
ized to contract as herein provided, shall ex-
ceed the limit herein prescribed, then no such
city or town shall be authorized or permitted to in-
crease its indebtedness in an amount exceeding two
per centum, and no such county, taxing districts or
other municipality, in an amount exceeding one per
centum, in the aggregate upon the value of the taxable
property therein, to be ascertained as herein pro-
vided, until the aggregate of its indebtedness shall
have been reduced below the limit herein fixed, and
thereafter it shall not exceed the limit, unless in case
of emergency, the public health or safety should so re-
quire." Section 158.

These sections were construed in Knipper v. Cov-
ington, 109 Ky. 187, 58 S. W. 498. It was there held
that each section provided a limitation on the power
to create indebtedness; that neither of them is a grant
of power, as no such grant was then necessary, the
power to create indebtedness not being theretofore
specially limited; that section 157 provides a barrier
against any indebtedness for any purpose beyond the
revenues for the year without a vote of the people;
that section 158 imposes an additional limitation on
the creation of indebtedness in the aggregate. The
court there points out that under section 157 a munici-
pality might vote a large debt on itself year after
year, an evil that had proven disastrous in former
times, and therefore the framers of the Constitution
placed a limit on aggregated indebtedness beyond
which even the people themselves could not go, unless
in case of emergency the public health or safety
should so require. The record does not present a
case of emergency where the public health or safety
requires that an outlay should be made. The court-

house has been used for many years, and, while the community has outgrown it, there is no such necessity for a new courthouse as to bring the case within the proviso as to an emergency where the public health or safety requires the expenditure. The courthouse may need some repairs, but these may be made by the fiscal court, so as to keep the building safe and comfortable; but its continued use as a courthouse will not endanger the public health or safety within the meaning of this clause of the Constitution.

It is earnestly insisted that by virtue of an act of the Virginia Legislature passed in 1751, which it is said is still in force, it is the duty of the fiscal court "to maintain and keep in good repair within each respective county and at the charge of such county, one good and convenient courthouse, of stone, brick or timber." It is also insisted that it was not the purpose of the Constitution to disable the fiscal court from providing for the courts and the people a good and sufficient courthouse. It was held in Hopkins County v. St. Bernard Coal Company, 114 Ky. 153, 70 S. W. 289, that it was not the purpose of the Constitution to disable the municipalities of the state from maintaining the public peace, and that, if the fiscal court had not levied a sufficient tax to pay the necessary expenses of maintaining the public peace, it should make an additional levy for this purpose. The same idea was also expressed in Overall v. Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R.. A. (N. S.) 433, but neither of these cases seem to have any relevancy here. The county has a courthouse which it has used for many years. The proposition is to incur an indebtedness for a new and more imposing building. The fund of $23,000 that is on hand would be entirely inadequate, and an indebtedness in excess

of the revenue provided for the year would have to be incurred. This cannot be done under section 157 of the Constitution without a vote of the people. But, as the indebtedness of Franklin county is now as great as section 158 allows, the people themselves cannot vote a greater indebtedness unless in case of emergency, which as we have said does not exist. To build a courthouse such as is contemplated would necessarily involve the incurring of an indebtedness of thousands of dollars; and, if such an indebtedness may be created for that purpose under the constitutional provisions above quoted, it is hard to see of what practical value these provisions would be to the municipalities of the state. The fiscal court may make a levy from year to year up to the constitutional limit, and may set apart so much of this levy for the building of a new courthouse as may be spared after meeting the other necessary expenditures, and in this way in a few years a sufficient courthouse fund may be accumulated; but the fiscal court is without authority now to make a levy sufficient to build a courthouse or to create an indebtedness for that purpose beyond the revenues provided for the year.

Judgment reversed and cause remanded to the circuit court, with instructions to overrule the demurrer to the response, and for further proceedings consistent herewith.