## City of Marion v. Haynes.

(Decided March 4, 1914.)

## Appeal from Crittenden Circuit Court.

1.  Municipal Corporations—Indebtedness of—Section 157 Constitution.—Under Section 157 of the Constitution, which prohibits any city or taxing district to become indebted to an amount exceeding, in any year, the income or revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose, a city may exceed the yearly revenue with the assent of two-thirds of the voters who vote upon that question.

2.  Municipal Corporations—Sections 157 and 158 Constitution.—Neither Section 157 nor Section 158 of the Constitution is a grant of power; each section provides a limitation on the power of municipalities to create indebtedness.

3.  Municipal Corporations—Indebtedness of—Limitation of.—Sections 157 and 158 of the Constitution were plainly intended to limit the tax rate and indebtedness of municipalities, of every class, by fixing a maximum tax rate and per centum of indebtedness, upon the assessed valuation of property therein, beyond which they could never go, except, first, for school purposes; second, for the purpose of paying the interest and providing a sinking fund for the extinguishment of an indebtedness created before the adoption of the Constitution; and, third, where, by reason of an emergency, the public health or safety of the municipality should so require.

4.  Municipal Corporations—Indebtedness—Emergency.—An emergency which would authorize a municipality to exceed the tax rate and indebtedness prescribed by Sections 157 and 158 of the Constitution, must be some sudden or unexpected occasion for action; some unforeseen occurrence, condition, or pressing necessity, that requires immediate attention.

5.  Municipal Corporations—Sewerage System—Emergency.—The need of a waterworks and a system of sewerage by a municipality does not create an emergency which would, under Section 158 of the Constitution, authorize the city to exceed the indebtedness therein limited.

6.  Municipal Corporations—Ordinances—Declaration of Cannot Make Emergency.—The declaration of the General Council of a city, by an ordinance, that an emergency exists, cannot make it so; the emergency must exist as a fact; and is to be determined under the evidence like any other fact.

J. A. MOORE for appellant.

A. C. & V. Y. MOORE for appellee.

Opinion of the Court by Judge Miller—Affirming.

This action was brought by Robert F. Haynes and other taxpayers of the city of Marion, a city of the fifth class, to enjoin the city and its officers from issuing bonds to the amount of $25,000.00 for the purpose of erecting municipal water works, and bonds to the amount of $20,000.00 for the construction of a system of sewers for said city. All the preliminary steps required by law were complied with; and under two ordinances passed September 9, 1913, the questions of issuing the two sets of bonds were submitted to a vote of the people of the municipality. The election showed that 208 votes were cast in favor of the water works proposition, and 100 votes against it; while on the sewer proposition, 211 voters voted for it, and 100 voted against it.

So, it will be seen that of those voting upon the propositions, more than two-thirds voted for each proposition.

By an ordinance duly passed, a tax of 62 cents upon each one hundred dollars of the assessed value of the property in said city was levied for the purpose of paying the interest upon said bonds, and creating a sinking fund which would discharge them within twenty years.

A demurrer to the petition was overruled, and the defendant having declined to further plead, the injunction was granted. From that judgment the city appeals.

The plaintiff's first ground for an injunction is, that there were 405 qualified voters in the town of Marion, two-thirds thereof being 270; and that as each of said propositions received much less than 270 votes, neither received the necessary two-thirds vote required by section 157 of the Constitution.

This question, however, is no longer an open one in this jurisdiction, since it was expressly decided in Montgomery County Fiscal Court v. Trimble, 104 Ky., 629, 42 L. R. A., 738, and in Board of Education v. City of Winchester, 120 Ky., 591 (overruling Belknap v. City of Louisville, 99 Ky., 474), that the assent of two-thirds of those voting upon the question submitted, was a sufficient approval.

In the next place, it is alleged in the petition, and must be treated as true upon the demurrer, that the present tax for maintaining the municipal government, exclusive of the school tax, is sixty cents on each one hundred dollars of taxable property, and that to add thereto the 62 cents authorized by the ordinance for the purpose of pay-

ing the interest and principal of the proposed bonds, would raise the tax rate to $1.22 per hundred, which is in excess of the rate authorized by sections 157 and 158 of the Constitution.

The briefs advise us that the chancellor rested his decision upon the sole ground that section 157 of the Constitution fixed an arbitrary maximum tax limit of seventy-five cents on each one hundred dollars of taxable property in cities of less than ten thousand population. Appellant stoutly denies that this case is to be controlled solely by section 157, but by section 158 as well; and that when sections 157 and 158 are read together and applied to the facts of this case, the action of appellant is fully warranted by those sections.

Sections 157 and 158 of the Constitution, read as follows:

"157—The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars; for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; and for counties and taxing districts, fifty cents on the hundred dollars; unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same.

"158—The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the fol-

lowing named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum; cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum; cities and towns of the fifth and sixth classes, three per centum; and counties, taxing districts and other municipalities, two per centum: Provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: And provided further, If, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.''

Marion is a city of the fifth class, and under section 3637, subsection 3, of the Kentucky Statutes, it is given power ''to levy and collect annually an *ad valorem* tax, not exceeding seventy-five cents on each one hundred dollars of the assessed value of all real and personal property within such city, except, as hereinafter provided: Provided, That any time the city council shall deem it necessary to incur any indebtedness, the payment of which cannot be met by the levy authoried by law, they

shall give notice of an election by the qualified electors of the town, to be held to determine whether such indebtedness shall be incurred."

The remaining portion of the statute prescribes the method of holding the election, and requires the levying of the tax necessary to pay the debt and interest, which was strictly followed in this case.

It is further shown that the value of the taxable property in the city of Marion, as estimated by the last assessment, is $743,500.00, three per cent thereon being $22,305.00; and while the city is not now in debt in any sum, the bonds, if issued, would create an indebtedness of $45,000.00, which is in excess of the three per cent maximum limit fixed by section 158 of the Constitution, above quoted.

The question of the meaning and effect of sections 157 and 158 of the Constitution, was before the court in Knipper v. City of Covington, 109 Ky., 192, where the city attempted, without the approving vote of the people, to incur an indebtedness exceeding its income and revenue for the year upon the ground that the public health or safety required it. And although the question now before us as to what would constitute an emergency under section 158, was not there presented because the indebtedness in the Knipper case had not been authorized by a vote of the people, nevertheless, the power of the city to incur such an indebtedness was discussed, and the limitations upon the power clearly pointed out.

After pointing out that section 157 provides a barrier against any indebtedness, for any purpose, beyond the revenues of the year without a vote of the people, and that section 158 imposes an additional limitation on indebtedness in the aggregate, the court said:

"Each section provides a limitation on the power to create indebtedness. Neither of them is a grant of power. No such grant was then necessary, for the power to create indebtedness was theretofore not specifically limited. When an emergency arises such as is named in section 158, then certain limits fixed in that section are removed. But section 157 is still in force, and, while the emergency indebtedness may be incurred, the provisions of section 157 still provide how it may be incurred; that is, by a vote of the people. If such indebtedness is in excess of the revenues for the year, and without that vote, if there is no indebtedness beyond the revenues, there is no con-

flict between them. We therefore must give each section full effect, and apply the limitation provided for in each of them.

"When considering the indebtedness which the city is authorized to create by a vote of the people, as provided in section 157, we are not to disregard the limitations provided for in section 158. And while the people may vote to create an unlimited indebtedness, so far as section 157 is concerned, it does not follow that we are to shut our eyes to any further limitation elsewhere provided. We must read section 158 into and along with section 157 to see how far and to what extent the people may vote a debt on themselves. So, in reading section 158, while we find certain limits beyond which, for ordinary purposes, the city can not go, yet for certain purposes we find, in effect, no limits at all. In other words, there is no limit or restriction of the amount to which a city may become indebted under certain emergencies. Practically, as to indebtedness for certain purposes, that section (158) is abolished. The way is entirely open for the imposition of any amount of indebtedness. But section 157 is to be read into and along with section 158, and the manner of creating an indebtedness 'for any purpose' must be as prescribed in section 157."

In Town of Bardwell v. Harlin, 118 Ky., 234, the municipality levied a tax exceeding the constitutional limit, to pay interest on, and provide a sinking fund for, water works bonds, issued pursuant to a vote of the people. In holding the tax invalid, the court said:

"The decision of the questions presented by the appeal involves the construction of sections 157, 158 and 159 of the Constitution. Appellants contended that the limitation contained in section 157 of the Constitution of a tax rate of 75 cents on the $100.00 for towns and cities having less than 10,000 inhabitants only applies to the rate of taxation which may be levied by the municipal authorities for the ordinary current expenses of the town, and does not apply to an indebtedness which has been created by a vote of the electors; that, as to indebtedness of this character, section 159 of the Constitution expressly confers the authority and makes it the duty of the municipal authorities to levy such additional tax as may, in their judgment be necessary to provide the means for the extinguishment of a debt so contracted

by a vote of the people. The sections referred to were plainly intended to limit the tax rate and indebtedness of municipalities of every class by fixing a maximum tax rate and per centum of indebtedness upon the assessed valuation of property therein, beyond which they could never go except, first, for school purposes; second, for the purpose of paying the interest and providing a sinking fund for the extinction of indebtedness contracted before the adoption of the Constitution; and, third, where the public health or safety of the municipality should so require."

The rule announced in Town of Bardwell v. Harlin, *supra*, was approved and followed in Troutman v. Hays, 31 Ky. L. R., 205, 101 S. W., 976.

See also Fiscal Court of Franklin County v. Commonwealth, 139 Ky., 314.

And, in considering the emergency feature, in the Knipper case the court held it was eliminated because the indebtedness had not been approved by a vote of the people, saying:

"The purpose of the indebtedness in the case at bar gets us from under the burdens and limitations of section 158, but the manner of creating any indebtedness beyond the revenues must be observed, as presented elsewhere in the Constitution, viz., in section 157. This is the only way to give force and effect to the instrument as a whole. The plea that this construction may result in disaster to a city by reason of some great emergency, which could not be met at once, because elections are held only once in a year, is no more than saying that we should disregard the Constitution because it is inconvenient to obey it."

Appellant relies upon Morris v. Hoagland, 116 S. W., 684, and Rees v. Kranth, 120 S. W., 370, to sustain the legality of the bond issues before us. A slight examination of those cases will, however, show that neither case is in point. In Morris v. Hoagland, the bonds were authorized by a vote of the people; and the proceedings being regular, the court said:

"Since the ordinances comply with the provisions of the statute, and there is no allegation in the pleadings that the said board of trustees in creating this indebtedness exceeded the constitutional limitations fixed by sections 157, 158 and 159 of the Constitution, we must conclude that they acted within their authority in providing for the creation of this indebtedness of $4,000.00."

The same state of case existed in Rees v. Kranth, where the court, in closing the opinion, said:

"The proceedings leading to the issual of the bonds in question seem to conform in all substantial particulars to the provisions of the statute, *supra*. This being true, and it not being alleged in the petition, or otherwise made to appear, that the incurring of the indebtedness proposed to be placed upon the City of Eminence will violate any of the restrictions imposed by sections 157, 158 and 159 of the State Constitution, no reason is perceived for our interfering with the sale by the city of the bonds ready to be placed on the market, the proceeds of which are to be used in repairing and constructing streets. In the case of Morris v. Hoagland, 116 S. W., 684, this court approved the incurring of a similar indebtedness, but of lesser amount, on the part of the town of New Castle."

It appearing, therefore, that the appellant had the power, in the case of an emergency, to exceed the indebtedness prescribed by the Constitution, the further question arises: Did an emergency exist in this case?

To meet the emergency requirement, the petition shows that the ordinance of September 9, 1913, which submitted the question of issuing the waterworks bonds to a vote of the people, declared, in the following terms, that an emergency existed:

"Whereas, the fact has been made known to the Common Council of the City of Marion, Kentucky, a city of the fifth class, that by reason of the absence in said city of an adequate waterworks system, unsanitary conditions exist, in said city, caused by the enforced use of open privies and closets, underground sinks and caverns, which are now and have been used for several years by the inhabitants of said city for depositing and disposing of sewage from residences and business houses; that such sinks and caverns are fast becoming filled with a vast amount of poisonous fecal matter, which is seeping out of such depositories through crevices and openings in the ground within the city running into the streets, and public thoroughfares, into cellars and basements, under buildings in the city, as well as creating foul cess pools throughout the city, and by reason of such conditions that there are in certain portions of said city, standing ponds and cess pools of stagnant surface water, filled with poisonous sewage matter, and that on

account thereof, the health and public safety of the City of Marion is seriously menaced, and that there is in consequence an emergency found to exist, and that the Common Council of the City of Marion, had found and hereby finds and determines that the public health of its inhabitants is in grave danger, and that it is impossible to remedy this evil, or eradicate this peril to the health and lives of the people, except to immediately proceed to construct an adequate sewage system for said city

"And, whereas, it has also been found and determined that there is now no sufficient fire protection by reason of the absence of an adequate waterworks system in said city;

"And, whereas, it has also been found and determined by the Common Council of said city, that in order to make the said sewage system fully effective, it is indispensably necessary in connection therewith, to also construct a waterworks system to flush the sewerage of said city, and make other provisions for the use of water in connection therewith, which is not practicable to do without such waterworks system;

"And, whereas, it having been also duly ascertained and determined by the Common Council that it will require the expenditure of the sum of twenty-five thousand dollars ($25,000.00) to construct a waterworks system for said city, to protect the health and lives of the people against the existing dangers above mentioned, and to afford a better protection against fire;

"And, whereas, the present bonded indebtedness of said city amounts to the sum of $000.00, and that the total assessed valuation of the property in said city is $743,500.00;

"Now, therefore, pursuant to the powers vested in this body, the Common Council of the City of Marion, and extended to the citizens of the city by virtue of section 158 of the Constitution of the Commonwealth of Kentucky, an emergency is hereby found to and determined to exist, and that the public health is imperiled, on account of an inadequate waterworks system for said city."

The ordinance of the same date submitting the question of issuing the sewer bonds, contained the following preamble:

"Whereas, the fact has been made known to the Common Council of the City of Marion, Kentucky, a city of

the fifth class, that by reason of the absence in said city of an adequate sewerage system, unsanitary conditions exist in said city, caused by the enforced use of open privies and closets, underground sinks and caverns, which are now and have been used for several years by the inhabitants of said city for depositing and disposing sewage from residences and business houses; that such sinks, pits and caverns are fast becoming filled up with a vast amount of poisonous fecal matter, which is seeping out of such depositories through crevices and openings in the ground within the city, and running into the streets and public thoroughfares, into basements and cellars, under buildings in the city as well as creating foul cess pools throughout the city, and by reason of such condition, that there are in certain portions of the city, standing ponds and cess pools of stagnant surface waters filled with poisonous sewage matter, and that on account thereof the health and public safety of the City of Marion, is seriously menaced, and that there is in consequence an emergency found to exist, and that the Common Council, of the City of Marion has found and hereby finds and determines that the public health of its inhabitants is in grave danger and that it is impossible to remedy this evil, or eradicate this peril to the health and lives of the people, except to immediately proceed to construct an adequate sewerage system for the city; and,

"Whereas, it having been also duly ascertained and determined by the Common Council that it will require the expenditure of the sum of twenty thousand dollars ($20,000.00) to construct an adequate sewerage system for the city to protect the health and lives of the people against the existing danger above mentioned; and,

"Whereas, the present bonded indebtedness of the city amounts to the sum of $000.00, and that the total assessed valuation of the property in the city, is $743,500.00;

"Now, therefore, pursuant to the powers vested in this body, the Common Council of the City of Marion, and extended to the citizens of the city, by virtue of section 158 of the Constitution of the Commonwealth of Kentucky, an emergency is hereby found and determined to exist, and that the public health is imperiled on account of the absence of an adequate drainage system for said city."

The petition alleged, however, that no emergency then existed or had theretofore existed, and that neither the public health nor safety of the citizens of Marion had been, or were then imperiled on account of the absence of a waterworks system or a drainage system.

While this court has never undertaken to say precisely what state of case would amount to an emergency that would authorize the levy of a tax in excess of the statutory rate under section 158 of the Constitution, it has, in Fiscal Court of Franklin County v. Commonwealth, 139 Ky., 307, 312, declared that the need of a new court house was not such an emergency. In that case it was shown that the condition of the court house was a menace to the health of those who used it; that the jury rooms were unfit for use; the court room in bad condition; the floor so rotten that it had broken through beneath the tread; the entire surroundings being in such condition as to be uncomfortable, unhealthy and dangerous. The court having ruled the Fiscal Court to show cause why it should not levy a tax to build a new court house, the court responded that it could not levy a tax for that purpose without exceeding the limits prescribed by sections 157 and 158 of the Constitution.

The circuit court sustained a demurrer to the response; made the rule absolute; and required the Fiscal Court to levy a tax and to erect a court house suitable for the needs of the people of the county; but, in reversing that ruling, and in referring to sections 157 and 158, *supra,* this court said:

"These sections were construed in Knipper v. Covington, 109 Ky., 187, 58 S. W., 498. It was there held each section provided a limitation on the power to create indebtedness; that neither of them is a grant of power, as no such grant was then necessary, the power to create indebtedness not being theretofore specially limited; that section 157 provides a barrier against any indebtedness for any purpose beyond the revenues for the year without a vote of the people; that section 158 imposes an additional limitation on the creation of indebtedness in the aggregate. The court there points out that under section 157 a municipality might vote a large debt on itself year after year, an evil that had proven disastrous in former times, and therefore the framers of the Constitution placed a limit on aggregated indebtedness beyond which even the people themselves could not

go, unless in case of emergency the public health or safety should so require. The record does not present a case of emergency which the public health or safety requires that an outlay should be made. The court house has been used for many years, and while the community has outgrown it, there is no such necessity for a new court house as to bring the case within the proviso as to an emergency where the public health or safety requires the expenditure. The court house may need some repairs, but these may be made by the fiscal court, so as to keep the building safe and comfortable; but its continued use as a court house will not endanger the public health or safety within the meaning of this clause of the Constitution.''

Tipton v. City of Shelbyville, 139 Ky., 541, wherein the municipality voted bonds for the construction of a system of sewerage, does not bear upon the question now under consideration, since the court there expressly said there was no allegation, or proof, that the proposed tax levy would exceed the constitutional limit; and, that being true, the question of emergency did not arise.

And while we will not undertake to lay down a rule by which an emergency under section 158 of the Constitution is to be determined in every case, it is apparent that such an emergency is some sudden or unexpected occasion for action; some unforseen occurrence, condition, or pressing necessity, that requires immediate attention.

In treating the subject of taxation, ''The Federalist,'' in No. 36, said:

''There are certain emergencies of nations, in which expedients, that in the ordinary state of things ought to be foreborne, become essential to the public weal.''

This language, no doubt, expresses the idea of the framers of our Constitution, since they evidently meant that an emergency was some pressing necessity out of the ordinary state of things, which could only be remedied by the use of unusual expedients.

It will not do to say that a municipal water works or a system of sewerage rises to the dignity of an emergency. On the contrary, they are luxuries, or, perhaps, necessities, of which the people of a small community might deprive themselves without any unusual or extraordinary danger. It might be otherwise in a large city, where there is a great aggregation of people residing; it

certainly would not, however, be a necessity in the same sense to a country village.

While waterworks and a drainage system may be very desirable, and no doubt are very much desired by appellant, their absence no more creates an emergency now than it has done at any time in the past ten or twenty years; and the declaration of the General Council of the town in its ordinance, that an emergency existed, did not make it so. It must exist as a fact, to be determined under the evidence like any other fact.

A leading author says:

"An exigency is an occasion of urgency and suddenness, where something helpful needs to be done at once; an emergency is more pressing, and naturally less common than an exigency; a crisis is an emergency, on the outcome of which everything depends."

While the situation at Marion may give rise to an exigency, it does not amount to an emergency.

Judgment affirmed; the whole court, except Judge Nunn, sitting.