## City of Winchester v. Nelson, et al.

(Decided April 17, 1917.)

### Appeal from Clark Circuit Court.

1. Municipal Corporations—Indebtedness—Constitutional Law.—In estimating the amount of indebtedness permissible under section 158 of the Constitution of Kentucky, it is necessary to include the proposed indebtedness, and all outstanding contracted indebtedness, contracted in a previous year or years, whether bonded, floating or of whatever kind.

2. Municipal Corporations—Indebtedness.—The floating indebtedness of the city must be estimated as existing at the close of the last preceding fiscal year; and the current expenses, for the current year, are not to be included, under section 158, but they must be included under section 157.

3. Municipal Corporations—Taxation of Franchises.—Franchises are properly included as part of the taxable property of the city.

4. Municipal Corporations—Indebtedness—Claims Against City.—A disputed claim against the city, which is being litigated in the federal courts, and which is not shown to be a valid claim against the city, cannot be included in the estimate of indebtedness, as only valid claims, which are, in fact, obligations of the city, can be considered as part of the city's indebtedness for this purpose, and the burden is on the one disputing the validity of a bond issue authorized by the vote of two-thirds of the voters, voting at an election held for that purpose, to show the invalidity thereof.

5. Municipal Corporations—Constitutional Law.—The proper construction of sections 157 and 158 of the Kentucky Constitution is,

that the first provision of section 157 is simply a limitation upon the power of the taxing authorities, without the assent of the voters, to levy taxes; second, that the second provision of section 157 permits, with the consent of the voters, the creation of an indebtedness that cannot be taken care of out of the levy permitted in the first part of section 157; and, third, that section 158 of the constitution places a final limitation upon the power to create debt, of the voters themselves.

6. Overruled Cases.—The cases of Town of Bardwell v. Harlin, 118 Ky. 232; Tipton v. City of Shelbyville, 139 Ky. 547; and City of Marion v. Haynes, 157 Ky. 688, in so far as they conflict herewith, are overruled.

7. Municipal Corporations—Indebtedness—Taxation.—Under section 157 of the Kentucky Constitution, the taxing authorities of a city having a population less than ten thousand may levy a tax not exceeding seventy-five cents on the hundred dollars, whenever necessary to meet current expenses; and when an indebtedness is authorized by a vote of the people, as provided therein, it is the duty of the city taxing authorities, under section 159, to levy an additional tax, over and above that required for current expenses, to provide for the annual interest on such debt, and for a sinking fund for the payment of the principal thereof, within not more than forty years, even though it be necessary to exceed the seventy-five cents on the hundred dollars.

9. Constitutional Law—Statute—Issue of Bonds by Municipal Corporations.—Subsection 34 of section 3490 of the Kentucky Statutes, in so far as it requires the bond issue to be redeemed within twenty years, instead of forty years, as provided in section 159 of the constitution, is unconstitutional.

J. SMITH HAYS, JR., J. SMITH HAYS, J. M. STEVENSON, F. H. HAGGARD, J. F. WINN and H. H. MOORE for appellant.

PENDLETON & BUSH and SPENCER & MOFFETT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Winchester, a city of the fourth class, with a population of less than ten thousand, on August 4, 1916, by an ordinance, proposed a thirty year bond issue of $180,-000.00, for the construction or purchase of a waterworks plant, and provided for a levy to raise $12,784.00 annually, for interest and sinking fund. This proposition was submitted, after due advertisement, to a vote, at the November, 1916, election, and was approved by more than two-thirds of the voters voting upon it, and, so far as this record shows, everything required by law was regularly done. The city then advertised the sale of these bonds for January 5th, 1917. On November 24th, 1916, the

appellees, who are citizens and taxpayers of the city, filed this action to enjoin the issuance and sale of these bonds. An amended petition was filed, on November the 14th, 1916, answer on December the 19th, 1916, to which a demurrer was sustained on December 20th, 1916, and an amended answer was filed, to which a demurrer was likewise sustained. On December the 23rd, 1916, by agreement of the parties, the deposition of S. B. Tracy, the city clerk, was taken and filed, and, the defendants declining to plead further, the cause was submitted and heard, by agreement, on the pleadings, exhibits, ordinance and deposition, both upon the motion for an injunction and upon the whole case. A judgment was entered, granting a perpetual injunction against the issue and sale of the bonds, from which judgment this appeal is prosecuted.

The attempted bond issue is alleged to be invalid for the following reasons:

First, it exceeded the five per cent. limit of indebtedness fixed by section 158 of the constitution.

Second, it will necessitate a tax levy in excess of the limit fixed by section 157 of the constitution.

Third, the bonds being thirty year bonds, are for a longer time than sub-section 34 of section 3490 of the Kentucky Statutes permits.

We shall discuss these three points in the order named.

1. Does the $180,000.00 bond issue exceed the five per cent. limit of section 158 of the constitution?

Section 158 of the constitution fixes the limit of indebtedness that may be contracted by a city of the fourth class with a population of less than ten thousand, at five per cent. of the aggregate of the taxable property therein, as determined by the assessment next before the last assessment previous to the incurring of the indebtedness, and this limit may not be exceeded for any purpose, or under any circumstances, except in certain emergencies, none of which is involved here. Knipper v. City of Covington, 109 Ky. 187, 58 S. W. 498; City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79.

In estimating the amount of indebtedness permissible under this section of the constitution, it is necessary to include in the estimate the proposed indebtedness, and all outstanding contracted indebtedness, contracted in a previous year or years, whether bonded, floating or of whatever kind. O'Bryan v. City of Owensboro, 113 Ky. 680,

68 S. W. 858, s. c. on petition for rehearing, 69 S. W. 800; Fiscal Court of Franklin County v. Com., 139 Ky. 307; Bonta v. Fiscal Court, 144 Ky. 241; County Bd. of Education v. Board Trustees Hopkinsvville Pub. Schools, 154 Ky. 309; Southern Bithulithic Co. v. DeTreville, 156 Ky. 513; Bradford v. Fiscal Court, 159 Ky. 544; Mc-Crocklin v. Nelson County Fiscal Court, 174 Ky. 308; but the current expenses of the city for the current year are not to be included in the estimate of total indebtedness under section 158, O'Bryan v. City of Owensboro, *supra*, although they must be included in estimates of indebtedness under the limitations of section 157.

With these provisions of the law in mind, we will now consider the facts of this case pertinent to this particular inquiry.

It is agreed that the 1915 assessment, which is the assessment that section 158 of the constitution fixes for the estimate, showed the value of the taxable property of the city, as fixed by the assessor's equalized assessment, to be $5,714,218.00, and that, in addition thereto, the assessed value of the franchises assessable in the city amounted to $260,212.00, thus making a total assessment of $5,974,430.00, if the assessed value of franchises is included. Appellees contend that the franchise assessments are not to be included, while appellants contend that they should be. If included, the five per cent. limit of indebtededness would be $298,721.50; if excluded, $285,710.90.

Franchise assessments are made and certified to the collecting officers by a different authority, under our law, than assessments of other property, but they are, nevertheless, a part of the total assessment upon which the city's taxes are levied, and there is nothing in the constitutional provision which indicates a purpose to exclude them from consideration, and we conclude that they are properly to be considered in the estimate. The total indebtedness, therefore, which the city was permitted to incur was five per cent. of the aggregate, $5,974,430.00, which is $298,721.50.

The indebtedness fixed by the admitted facts is:

City sewer construction bonds ............................$47,000.00
City hall construction bonds ............................ 40,000.00
City public school bonds ............................ 10,000.00
Proposed bond issue ............................180,000.00

Total bonded indebtedness............................$277,000.00

To this indebtedness appellees would add a floating indebtedness which the city owed, amounting, on December 2, 1916, to $20,026.54, but at the end of the last fiscal year, May 31, 1916, to $12,972.50; and a debt amounting to about $18,000.00, which appellees insist the city owes to the waterworks company for city hydrants for which it has not paid.

The first of these two items should be added, and the amount of that indebtedness at the close of the last preceding fiscal year is the proper amount to be added, because only upon that day can the amount of any existing indebtedness be determined. To attempt to fix the amount within the fiscal year is, necessarily, speculative, as it may or may not be taken care of out of the income for the current year, but it presumably will be, since the law requires it shall be done, and neither the expenses nor the income for the current year ought to be included in the estimate under section 158 of the constitution, with which we are now concerned.

The alleged indebtedness to the waterworks company should not be included, because, upon the record here, we are unable to determine whether or not there is any liability upon the city, for any part of this indebtedness. The city denies its liability, as we understand it, and the matter is now being litigated by the waterworks company and the city in the Federal court. The question is not presented to us here in such a way as to enable us to reach any conclusion as to the validity of this claim against the city. The burden is upon the appellees to show the invalidity of the bond issue, and consequently of each item of existing indebtedness affecting same. City of Winchester v. Winchester Waterworks Co., 149 Ky. 177; Bradford v. City of Glasgow, 143 Ky. 401; Morris v. Hoagland, 116 S. W. 684. Only valid claims, which were in fact obligations of the city, can be included in the estimate of the city's indebtedness.

Adding the $12,972.50 of floating indebtedness, outstanding against the city, to its admitted bonded indebtedness, including the proposed issue, amounting to $277,-000.00, we have as the total indebtedness of the city $289,972.50, which is within the five per cent. limit of section 158 of the constitution, determined above to be $298.721.50.

2. Does the proposed issue necessitate a levy in excess of the limitation of section 157 of the constitution?

There are two separate prohibitions in section 157, the first providing that the tax rate of cities having a population less than ten thousand shall not, at any time, exceed seventy-five cents on the one hundred dollars, unless it shall be necessary to pay the interest on and provide a sinking fund for the extinction of an indebtedness contracted before the adoption of the present constitution, or for school purposes, and the second providing that no county, city, town or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, in an amount exceeding in any year the income provided for such year, without the assent of two-thirds of the voters thereof, voting at an election held for that purpose.

With the second provision of this section we are not here concerned, as the assent of two-thirds of the voters, voting at an election held for that purpose, was obtained. It is with reference to this latter section that it has been frequently held by this court, that sections 157 and 158 must be considered together, in ascertaining whether or not the limit of indebtedness has been exceeded.

The first provision of section 157, when properly considered, has no reference to the amount of indebtedness that may be incurred. It is, rather, a limitation upon the tax rate that may be levied. While the limitation upon the tax rate and the limitation upon the amount of indebtedness permissible necessarily bear a relation to each other, they are, nevertheless, separate and distinct limitations, and it was never intended by the framers of the constitution that one should be a limitation upon the other. It is a strained construction that would hold that by a vote of the people, as provided for in the latter section of 157, an indebtedness might be created to the extent of the percentage of the total assessed value of the property located in a city, district or county permitted by section 158, which could be annulled by the first part of section 157, which puts a limitation upon the tax rate that the taxing authority, without the consent of the voters, has the power to levy. To so hold renders nugatory and meaningless the latter part of section 157. The first provision of section 157 gives the taxing authority the power, without the consent of the voters, to levy a fixed tax rate for the purpose of meeting necessary expenses incident to the local government. If all the revenue from the maximum of this tax rate is needed for the current expenses, then, even though the taxing district had no

outstanding indebtedness, of any kind, it would be unable, no matter how urgent the need, even with the assent of the required number of voters, to avail itself of the latter provision of section 157, or of section 158.

It was clearly the intention of this constitutional provision to permit local taxing districts, with the assent of two-thirds of the voters, to incur an indebtedness not in excess of the limitations of section 158, and it is equally as certain, that they also intended that the taxing authority might levy a tax, without the assent of the voters, to the extent of the limitations of the first part of secion 157, whenever necessary to meet current expenses.

In the case at hand, it is shown by the evidence, that it is necessary, in order to meet the current expenses of the city of Winchester, for the city council to levy a tax of seventy-five cents on the one hundred dollars, and that, in order to pay the interest and provide a sinking fund for the $97,000.00 of bonded indebtedness it already owes, it has been necessary, for several years, for the council to exceed the seventy-five cents upon the hundred dollars. It is, therefore, apparent that, unless the city of Winchester can exceed the seventy-five cents on the one hundred dollars, it cannot increase its indebtedness in any amount over the present indebtedness of $97,000.00, if in fact it had the right to create that indebtedness or any part of it, although that indebtedness does not approach the limit permissible under section 158 by nearly $200,000.00.

It is our judgment, that the proper construction of these three provisions of sections 157 and 158 of the constitution is, first, that the first provision of section 157 is simply a limitation upon the power of the taxing authorities, without the assent of the voters, to levy taxes; second, that the second provision of section 157 permits, with the consent of the voters, the creation of an indebtedness that cannot be taken care of out of the levy permitted in the first part of section 157; and, third, that section 158 of the constitution places a final limitation upon the power to create debt of the voters themselves.

Under this construction, the city of Winchester, by its taxing authorities, and without the consent of the voters, can levy a tax, to meet the necessary, legitimate expenses of the city, not to exceed seventy-five cents on the hundred dollars, and the taxing authorities, with the assent of the voters, may, in addition, create an indebtedness not in excess of five per cent. of the taxable property in the

city, and, having the power thus to create an indebtedness, the council must, under section 159 of the constitution, provide for the interest upon the indebtedness, and for a sinking fund to discharge it, and this it can do only by adding to its tax rate, over and above what is required for its current expenses, a sufficient amount to produce the required sum; and we cannot believe that the framers of the constitution ever intended that the city taxing authority, having the consent of two-thirds of the voters, could avail itself of the provisions of section 158, only by depriving the city of the necessary funds for current expenses. This construction would put a city such as Winchester in a position where it must either forego the privileges of section 158, or accept such privileges by rendering the current management of the city's affairs inefficient.

We are quite aware that our present construction is not in harmony with the construction heretofore placed upon the tax rate provision of section 157, in the case of Town of Bardwell v. Harlin, 118 Ky. 232, 80 S. W. 773, and either followed or approved, in Troutman v. Hayes, 101 S. W. 976; Tipton v. City of Shelbyville, 139 Ky. 541; City of Marion v. Haynes, 157 Ky. 687, and several other cases; but we are convinced that our present construction is right.

This same question was considered by the whole court, in the recent case of McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, where it was said:

"When the people vote to create a bonded debt, then a tax in addition to the 50 cent tax must be levied in such an amount as will enable the county to pay the interest and create a sinking fund to take up the bonds, leaving the 50 cent tax the court is authorized by the constitution to levy, to be used by it for necessary public purposes. The only limitation on the right of the people of the county to vote taxes in excess of the 50 cent tax is the limitation provided in section 158," and in Hammond v. Lester, 159 Ky. 310, the whole court sitting:

"The power conferred upon the fiscal courts of the several counties of the state to levy taxes, must be exercised by them according to the provisions of the constitution of the state and within the limitations imposed by that instrument; and when it is therein declared, as in section 157, that the tax rate for a county, exclusive of the school tax, shall not exceed fifty cents on the hundred dollars, its fiscal court in making the tax levy can

not exceed that amount. The constitutional provision imposing the limitation upon the power of the fiscal court to tax property of the citizens of the county is mandatory and must, therefore, be obeyed. If the needs of the county require a sum of money greater in amount than can be produced by a tax of fifty cents on the $100.00 in any one year, it may be obtained, not through a levy above that amount made by the fiscal court, but, as further provided by section 157, constitution, by the assent of two-thirds of the voters of the county, voting at an election held for that purpose.''

See also Board of Councilmen of City of Frankfort v. Morgan, 110 S. W. 286; Knipper v. City of Covington, 109 Ky. 187.

While in the cases of McCrocklin v. Nelson County Fiscal Court and Hammond v. Lester, *supra,* the power of fiscal courts to exceed a tax rate of fifty cents on the hundred dollars was under consideration, the conclusions of the court are equally applicable to the case at bar, since the first part of section 157 fixes the tax rate upon fiscal courts at fifty cents on the hundred dollars, and upon the taxing authority of cities having a population of less than ten thousand, at seventy-five cents on the hundred dollars.

It is, therefore, apparent that, even if we assume that the board of councilmen of the city of Winchester will levy a tax in excess of seventy-five cents on the hundred dollars, sufficient to pay the interest and create a sinking fund for its present and proposed indebtedness, created by vote of the citizens, its action will not be in violation of either section 157 or 158 of the constitution.

It is not shown, however, that such action will be necessary, since no levy has yet been made with the proposed indebtedness in contemplation, and it is suggested by the pleadings and the evidence, and argued by counsel for appellant, that a very much less tax levy will be sufficient to meet the city's requirements, owing to a proposed occupation license, and it is doubtful if a request for an injunction against the bond issue, because it would necessitate a tax levy in excess of the limit of section 157 of the constitution, is not premature until the taxing authorities have made a levy, which question, however, we do not now decide. We should state, however, that estimated funds to be derived from license taxes cannot be included in estimates to determine the validity of a proposed in-

debtedness. Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R. A. (N. S.) 433.

3. The remaining question is, whether or not the proposed bonds are rendered invalid by reason of the fact that they do not mature for thirty years.

Sub-section 34 of section 3490 of the Kentucky Statutes, which is the legislative authority of the board of council for issuing these bonds, provides, in part:

"And in such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than twenty years from the time of contracting the same."

Section 159 of the constitution is as follows:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

It will be observed that the constitution requires that the tax shall be sufficient to pay the annual interest on the indebtedness, and to create a sinking fund to pay the principal thereof, within forty years from the time of contracting the indebtedness. So the question is, whether or not the legislature had the power to fix a different time limit for the retirement of the bonded indebtedness permitted by the constitution, within the time fixed by the constitution.

It is true, as said by this court in the case of Knipper v. City of Covington, 109 Ky. 187, and in several subsequent cases, that sections 157, 158 and 159 of the constitution are not grants of power, but are limitations, but they are limitations upon the legislature, as well as upon the local taxing districts, and the constitutional, rather than the legislative, limitations must prevail. These sections do not grant powers to the local taxing districts, neither do they grant to the legislature any power to change their terms. If the legislature could change the time for maturity for local tax district bonds from forty to twenty years, it could as well abridge the time to ten or five

years, or even one year, and thereby entirely annul the constitutional provision, which, of course, it had no right to do. While the constitutional provisions referred to are not grants of power, they, nevertheless, recognize a right in the local taxing districts, and place a limitation upon this recognized right; and the legislature may not change this constitutional limitation. Board of Education v. City of Winchester, 120 Ky. 591, 87 S. W. 768; E. T. Lewis Co. v. City of Winchester, 140 Ky. 244, 130 S. W. 1094.

Wherefore the judgment is reversed and cause remanded for proceedings consistent herewith.