## Samuels, et al. v. City of Clinton, et al.

(Decided April 29, 1919.)

### Appeal from Hickman Circuit Court.

1. Municipal Corporations—Power to Create Indebtedness—Emergency.—To authorize a municipality to incur indebtedness in excess of the rates prescribed by section 158, of the Constitution, it must be shown, that there exists an emergency, requiring the incurrence of the indebtedness to protect the public health and safety.

2. Municipal Corporations—Indebtedness—Emergency.—An emergency, within the meaning of section 158 of the Constitution, must be some unforeseen, or unexpected occasion for action, a pressing necessity, that demands, a remedy, at once.

3. Municipal Corporations—Indebtedness—Health.—The emergency provided for, by section 158, of the Constitution, is limited to the

perils to the public health and safety, and eliminates any mere apparent necessities growing out of conveniences, or out of conditions, which are merely inconvenient to be borne.

4. Municipal Corporations—Indebtedness—Emergency.—The question of whether an emergency exists, within the meaning of section 158, of the Constitution, must be determined from the particular facts of each case.

5. Municipal Corporations—Indebtedness—Emergency.—The necessity for an electrical lighting plant and system, in a city of the fifth class, is not an emergency within the meaning of section 158, of the Constitution, although the plant has been in use in the city for many years.

E. T. BULLOCK for appellants.

J. D. VIA, JOE W. BENNETT and ROBBINS & ROBBINS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The city of Clinton, is a city of the fifth class, with a population of less than five thousand. The value of the taxable property, in the city, for the year, 1917, amounted to the sum of $727,064.00, and for the year, 1918, to the sum of $613,659.00. There is outstanding, against the city, an indebtedness of $10,500.00, represented by the bonds of the city, heretofore, issued. At the regular election, held in November, 1918, under an ordinance of the council of the city, properly enacted, the question, whether or not, the city should incur an indebtedness of $30,000.00, to purchase from the Clinton Water & Light Company, its water and light plants then in operation in the city, was submitted to the legal voters of the city. Under the ordinance, the city was to issue sixty bonds of $500.00 each, three of which should mature each year, and each bearing interest from date, to evidence the indebtedness for the $30,000.00. At the election, two hundred and eighteen voters, voted in favor of incurring the indebtedness, and eighteen voted in opposition to it. The officers, of the city, were proposing to close a contract for the purchase of the water and lighting plants for the sum of $30,000.00, and in payment, to issue and deliver the bonds, of the city, to the proprietors of the plants for the amount, in number, bearing interest and maturing, as stated above, and to enjoin them from so doing, and to prevent the incurring of the debt by the city, the appellants instituted this suit. The city, and its officials filed an answer, to which the appellants offered a general de-

murrer, and the demurrer having been overruled, the ap-
pellants declined to further plead, their petition was dis-
missed, and they have appealed to this court. There is
no issue made as to any question of fact by the petition
and answer. The appellants insist, that the debt is a
greater one, than the city has the power to incur, under
the provisions of sections 157 and 158 of the Constitution,
while the appellees contend, that, under the state of facts,
set forth in their answer, the truth of which is admitted
by the demurrer, the city is clearly within its author-
ity to incur the debt, and for that reason the bonds will
be valid and binding upon the city, when issued. It is
averred in the answer and not denied, and the statement
of the valuation of the taxable property of the city shows,
that the debt could be paid, as proposed, in the ordinance,
within the time there specified, without increasing the tax
rate, above the amounts prescribed by section 157, *supra*.
While the proposed debt is greater, than could be satis-
fied by the "income and revenue provided for such
year," that is the year, in which the debt is proposed to
be incurred, or that could be provided for that year, with-
in the limitation of the constitutional provision, it is ad-
mitted, that at the election regularly called and held for
that purpose, more than two-thirds of the legal voters of
the municipality assented to incur the indebtedness.
Hence, the incurrence of the debt, by the municipality, is
not inhibited by section 157, *supra*. It is, however, averred
in the petition and admitted in the answer, that the munic-
ipality now owes $10,500.00, for which it has issued its
bonds, which together with the proposed debt, would
make an aggregate indebtedness of $40,500.00; that three
per centum of the value of the taxable property, assessed
for taxation for the year, 1917, the assessment next, be-
fore the one just preceding the proposed incurrence of
the debt, is only $21,811.92, or $8,188.08 less than the pro-
posed debt, and $18,688.08, less than the aggregate of the
proposed debt and the existing indebtedness, and the
debt thus exceeding three per centum of the value of the
taxable property, the city, is prohibited from incurring
it, by the provisions of section 158 of the Constitution.
To avoid the inhibition of section 158, *supra,* the appel-
lees alleged, in the answer, that an emergency existed,
which rendered necessary, the incurrence of the debt,
in order to protect the health of the citizens of the mu-
nicipality and their property. Whether the facts, averred

in the answer and admitted by the demurrer, make apparent such an emergency, that the public health and safety require the incurrence of the debt, is the concrete question for decision and to determine this question, it is necessary to advert to the facts upon which the contention is based. The following state of facts is substantially alleged, in the answer, to exist: In 1897, the city granted, to the Clinton Water & Light Company, a franchise to operate a water and light plant, in the city, for the period of twenty years, and that under such franchise, it erected, and maintained a water and light plant until the expiration of the franchise on the 4th day of November, 1917, for the full period for which the franchise was granted. It should, however, be stated, that the order, granting the franchise to the Water & Light Company, as set out by the appellants, in their petition, and adopted by the answer, only granted a franchise to maintain a water plant, but the petition avers, that an electric lighting plant was, also, conducted under it and the answer alleges the same, and hence, it appears, that regardless of the source of its authority, the company did, also, establish and maintain a lighting plant, either in connection with, or as a distinct plant from the water plant. Previous to the granting of the franchise, the citizens of the municipality secured water for use, for the various uses of water, from cisterns, which, during the long continuance of the franchise were allowed to fall into decay and ruin; that now, all the water, used by the inhabitants of the municipality, for drinking, bathing and domestic purposes, is furnished by the plant of the Water & Light Company; that the vaults and closets, formerly used, have now disappeared, and sanitary closets have been installed in the offices, business houses and dwellings of the citizens, and which connect with a sewerage system, which the water plant enables to be in operation; that the dwellings, business houses, and the domestic arrangements of the citizens, have been adjusted to the use and operation of the water plant; that no stream, from which water can be obtained, exists in, or about the city, and the nearest stream, is Bayon de Chein creek, which is at a distance of three miles, and its waters are unwholesome and unfit for use; that the water, which can be reached by boring wells, in the city, at a depth of fifty feet or less is unwholesome and unfit for use, on account of its impregnation by mineral sub-

stances; that wholesome water can not be obtained, at a depth of less than three hundred feet, which makes prohibitive the sinking of wells by private enterprise; that the source of the Water & Light Company's water supply, is three hundred feet from the surface and is pure and wholesome and that its water supply is the only wholesome water, in the vicinity, and without it, there could be no available water in quantity sufficient for use in protection from fire; that after the termination of the franchise, the company gave notice of its purpose to discontinue the furnishing of water and light to the city and its inhabitants, and that it would dismantle its plant, and sell the materials for merchandise, which, on account of the great advance in the price of such materials, would now sell for as much as their original costs; the insurance companies gave notice, that in the event the water plant ceased to furnish water and light, they would refuse to any further insure the property of the citizens against loss by fire; that such a plant could not now be erected and equipped for $30,000.00 and the plant was reasonably worth that sum; that after the expiration of the franchise the city offered to sell another franchise to furnish water and lights, at prices, to be paid to the ones purchasing and operating under the franchise, thirty-five percentum greater than the prices paid for water and lights to the Water & Light Company, but, no one would bid for, or buy the franchise, which was offered; that the only arrangement, which could be made with the Water & Light Company, was for the city to lease its plant, at a rental of $200.00 per month, until the municipality could take proper steps to purchase it, with an option to purchase it at the sum of $30,000.00, and with the view of exercising the option, the election was held and the debt proposed to be incurred. Section 158, *supra,* so far as is applicable to a city of the fifth class, is as follows: "The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz: . . . ; cities and towns of the fifth and sixth classes, three per centum;

. . . ; provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution; and provided, further, if, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require . . ." The construction, which has heretofore been placed upon the above section of the Constitution, touching the emergency provision of it, is, that the provision applies to any of the municipalities, mentioned in the secton, and this is now the settled law of the state. Knipper v. City of Covington, 109 Ky. 187; City of Marion v. Haynes, 157 Ky. 687; Fiscal Court of Franklin Co. v. Comlth., 139 Ky. 307. Hence, it seems, that the municipality in the instant case, is authorized to incur the debt proposed, if such an emergency exists, that the public health and safety require the debt to be made. This court has never, except in general terms, defined what an emergency must be or of what circumstances it must consist, to authorize a municipality to incur indebtedness, in excess of the amounts prescribed for it by section 158, *supra*. The emergency by the terms of the Constitution, is limited to perils to the public health and safety, and eliminates any mere apparent necessities growing out of conveniences, or out of conditions, which are merely inconvenient to be borne. This court, has never held any conditions or circumstances presented, in any case, to create such an emergency, as to justify a municipality,

in incurring an indebtedness beyond the limit prescribed by the section of the Constitution, *supra,* but, it has held in Franklin Fiscal Court v. Comlth, *supra,* that the necessity for the erection of a new and more imposing court house, where the old court house could be made healthful and safe by a moderate expenditure, was not such an emergency as the Constitution required, and in City of Marion v. Haynes, *supra,* it was held, that the conveniences and advantages of a system of water works, in that particular case, did not create an emergency in the meaning of the Constitution. Discussing the question of a system of water works and sewerage, in the last mentioned case, the court said: "It will not do to say that a municipal water works, or a system of sewerage rises to the dignity of an emergency. On the contrary, they are luxuries, or, perhaps, necessities, of which the people of a small community might deprive themselves, without any unusual or extraordinary danger. It might be otherwise, in a large city, where there is a great aggregation of people residing; it certainly would not, however, be a necessity in the same sense in a country village." It is evident, from the language of the court, in that case, that it did not intend to hold, that the necessity for a water works system, could not, under any state of facts, arise to the dignity of an emergency, justifying the municipality to increase its indebtedness beyond the per centum prescribed to be of general application to such a municipality under ordinary circumstances. It is apparent, that the question of emergency must be determined in each case from the particular facts of that case. In the case of City of Marion v. Haynes, the facts, while some are similar to the facts presented in this case, certain very essential facts are very dissimilar. In the city of Marion, a water works nor sewerage system had ever existed, and the people had never adjusted themselves, nor their necessary arrangements for health and safety to property, upon the existence of water works and sewers. It did not appear, that wholesome water was inaccessible or beyond the reach of the means, or enterprise of the average citizen. In fact, the conditions were just as they had always been, theretofore, and there was no ground upon which to rest an emergency. An emergency is defined in 15 Cyc. 542, to be "any event or occasional combination of circumstances, which calls for immediate action or remedy; pressing necessity; exi-

gency; a sudden or unexpected happening; an unforeseen occurrence or condition.'' In City of Marion v. Haynes, *supra,* it was said: ''In treating the subject of taxation, 'The Federalist' in No. 36 said: 'There are certain emergencies of nations, in which expedients, that in the ordinary state of things ought to be foreborne, become essential to the public weal.' This language, no doubt, expresses the idea of the framers of our Constitution, since, they evidently meant, that an emergency was some pressing necessity out of the ordinary state of things, which could only be remedied by the use of unusual expedients.''

Section 158, *supra,* does not contain any technical terms, and being a provision of the Constitution, adopted by a popular expression of the people, at large, its terms should be given a meaning, in accordance with their usual and customary signification, and in accordance with their fair intendment. Section 157 and section 158, *supra,* were intended by the people, in the adoption of the Constitution, to protect themselves against themselves, when they should act under sudden impulse, or from expectations growing out of mistaken optimism, as to advantages and ability to pay, and thus to burden themselves with public debts, for which they would receive, in the end, no fair consideration, and beyond the reasonable ability of municipalities to pay, and to protect the minority against the excessive optimism, of the majority, but, it was not intended, by the section, to deprive the municipality of all remedy necessary to preserve its health and safety, when an unexpected, and hard, pressing necessity makes such remedy necessary. Hence, applying the definition made of an emergency, in City of Marion v. Haynes, *supra,* while the facts of this case present an emergency, which will authorize the municipality to create an indebtedness, in excess of three per centum of the value of its taxable property, to provide a system of water works, it is, also, proposed to create the debt, in part, for the purchase of an electric lighting plant and system. What part of the $30,000.00 debt is to be created to secure the water works system, and what part is to go to pay for the lighting system, is not designated. It will be observed, that under the ordinance the question, submitted at the election, was whether the debt should be incurred for the purchase of the water works system and the electric lighting plant, and the question propounded to the

voters, and which they answered by their votes, included the purchase of both plants. The franchise, offered by the municipality, and for which no one would bid, was a franchise to operate both a water plant and an electric light plant. While an electric light plant and a system of electric lights is a great convenience and a most delightful and desirable luxury to the inhabitants of a municipality of the fifth class, the necessity of having one for safeguarding the public health or public safety, is not so great as to create an emergency, which would authorize the municipality to create an indebtedness beyond the three per centum fixed by section 158, of the Constitution. The power to incur an indebtedness for a water plant and a lighting plant, jointly upon the ground of an emergency, as contemplated in the Constitution, can not be upheld, when no emergency could exist for the purchase of the lighting plant, although an emergency might exist for providing a water system, and thus to create a debt in part for something for which no emergency exists.

Hence, the court, below, was in error, in overruling the demurrer to the answer, and the cause is remanded with directions to sustain the demurrer, and for proceedings consistent with this opinion.