## Harris v. City of Morganfield, et al.

(Decided January 15, 1924.)

### Appeal from Union Circuit Court.

1. Municipal Corporations—Ordinance Calling Election on Question of Incurring Indebtedness Valid, Though Passed After Registration Day.—Ordinance of city of Morganfield, passed in accordance with Kentucky Statutes, section 3490, subsection 34, providing for submission to voters of question whether city should incur indebtedness for a proposed improvement, could not be attacked on the ground that it was not passed and notice and publication were not had until after the regular registration day, and that, if it had been known that such an election would be called, a larger number of voters would have registered and voted, as it is presumed that the voters qualify themselves to meet any and all elections that may be held by registering at the proper time.

2. Municipal Corporations—Ordinance Impliedly Repealed by Later. —If there is a conflict between two ordinances, and the last covers the entire subject, the first is repealed by implication, and this is true as to an ordinance calling for an election under a statute providing for submission to voters of question of water supply improvement.

3. Time—Ordinance and Notice of Election as to Improvement Held Published for Two Weeks.—Where ordinance and notice of election, submitting question of water supply improvement to voters, was published, first in a newspaper dated October 23, 1923, and thereafter in each issue of that paper to and including November 6th, there was a sufficient compliance with Kentucky Statutes, section 3490, subsection 34, requiring notice to be published for at least two weeks.

4. Municipal Corporations—Ordinance and Notice of Election for Improvement Held to Specify Indebtedness and Tax.—An ordinance and notice of election to determine improvement of water supply were sufficient, where they fixed the maximum indebtedness to be incurred and the maximum sum to be collected annually for the purpose of paying the interest and creating a sinking fund to liquidate bonds, under Kentucky Statutes, section 3490, subsection 34.

5. Municipal Corporations—Statute Held to Confer Power on Cities of Fourth Class to Provide Inhabitants with Water.—Kentucky

Statutes, section 3490, subsection 8, authorizes council of cities of the fourth class to provide water for the inhabitants, and it is immaterial whether subsection 36 is valid under Constitution, section 51, the effect of subsection 36 being only to extend the authority to light, power, heat, and telephone service.

6. Municipal Corporations—Ordinance for Improvement Election should Comply with Constitution and Not Invalid Statute.—Kentucky Statutes, section 3490, subsection 34, providing that indebtedness for improvements must be paid within a period of not more than 20 years, is in conflict with the Constitution, and an ordinance calling an election to vote on water supply improvement, and providing that the bonds to be issued would be due and payable in eight series of from 5 to 40 years, was valid.

7. Municipal Corporations—Tax in Excess of 75 Cents Authorized for Water Supply.—In suit to test validity of bonds issued for water supply improvement by a city of the fourth clsas, under Kentucky Statutes, section 3490, subsection 34, the burden was upon the plaintiff to show that it would be necessary to levy a tax in excess of 75 cents, the limit fixed by Constitution, section 157, even if such limit could not be exceeded for the purpose, but section 159 of the Constitution does permit a higher levy than 75 cents, if required.

8. Municipal Corporations—Indebtedness for Water Supply May Exceed 5 Per Cent of Assessed Valuation.—Under Constitution, section 158, limiting indebtedness to be incurred by cities of fourth class to 5 per cent of assessed valuation, a city could exceed that indebtedness for the purpose of making a necessary improvement in the water supply rendered necessary by abandonment of mine from which the water had been taken.

TRUMAN DRURY for papellant.

ALLEN, HARRIS & ALLEN and T. S. WALLER, JR., for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Morganfield is a city of the fourth class, having over 2,500 population. In the year 1894 the municipality constructed a system of water works, drawing the water from deep wells. The citizens took advantage of the facilities thus afforded and installed water and toilets in public buildings and residences and in time abandoned all other sources of supply, so that they now are dependent upon the water plant; in other words, it has become almost a necessity to the continued existence of the city.

About the year 1902 a coal mine was developed within the city and a shaft sunk to the No. 11 seam of coal. The

shaft drained the wells affording the water supply and the city arranged with the coal company to use the water pumped out of the mines. This seems to have been satisfactory, but in the year 1923 the coal company sank the shaft mentioned 120 feet depeer to the No. 9 seam of coal. When that was done seam No. 11 was abandoned and closed, and the water therein cut off from fresh air, and it was no longer possible to go through the old works to attend and care for the water which spread over and came in contact with goaf, mine refuse and excrement of man and beast which had accumulated in twenty years of mine work, and as a result the water is polluted with bacteria of various sorts dangerous to health, is altogether unwholesome and cannot be used for drinking or cooking purposes. It is also impregnated with minerals to such an extent as to corrode water boilers, pipes and fittings, and is so hard that it cannot be used for domestic purposes.

The city employed competent engineers to investigate and report a plan to meet the situation, which they did. From their report and other evidence it appears that the present water system cannot be rendered suitable for use and that the only feasible method is to install a pumping plant on the Ohio river six miles distant and pipe the water from there to the city.

To meet this the city council passed an ordinance in accordance with subsection 34 of section 3490 of the Kentucky Statutes, providing for a submission to the voters of the question whether or not the city should incur an indebtedness not exceeding $120,000.00 for such proposed improvement and should levy an annual tax of not exceed-$9,500.00 for the purpose of paying the interest thereon and providing a sinking fund for the payment of the principal.

The result of the election was 781 votes in favor of the proposed indebtedness and 33 against it. This suit was brought under the "Declaratory Judgment Act" to test the validity of the bonds, eight reasons being assigned against their validity.

The first complaint is that the ordinance was not passed and notice and publication were not had until after the regular registration day, the argument being that if it had been known that such an election would be called a larger number of voters would have registered and voted, and thereby the result of the election would have been changed. This objection cannot be seriously

considered as it is presumed that the voters qualify themselves to meet any and all elections that may be held, by registering at the proper time.

It is next complained that an ordinance was enacted on October 5, 1923, calling for such election and published as required by law, though no notice of election was published. That thereafter on the 19th day of October, practically the same ordinance was again passed without specifically repealing the former one, that this ordinance and the notice of election was published, but that it was ineffectual because it did not repeal the former one. This contention is without merit. If there is a conflict between the two ordinances, as the last covers the entire subject, the first is repealed by implication. Mullins c. Nordlow, 170 Ky. 169.

It is next claimed that the ordinance and notice of election was not published as required by section 3490, subsection 34 of the Kentucky Statutes. It is shown that it was published first in an issue of the Morganfield Sun, dated October 23, 1923, and thereafter in each issue of that paper to and including November 6. This is a sufficient compliance with the statute. Bryant v. Land, 197 Ky. 480.

The fourth ground is that the notice of the election did not specify the amount of indebtedness proposed to be incurred nor the amount of money necessary to be raised annually by taxation for the interest and sinking fund as provided and required by the statute.

The ordinance and notice fixed the maximum indebtedness to be incurred and the maximum sum to be collected annually for the purpose of paying the interest and creating a sinking fund to liquidate the bonds, and are in this respect entirely similar to those approved by this court in the case of Rash v. City of Madisonville, 148 Ky. 154.

It is next urged that subsection 36 of section 3490, Ky. Statutes, authorizing cities of the fourth class to provide inhabitants with water, &c., is unconstitutional because chapter 71, Acts of 1918, seeking to amend section 3490, in the adoption of subsection 36, did not set out that section at length as it would read when amended as required by section 51 of the Constitution. It is unnecessary for us to decide this question as the remaining subsections of section 3490 are not attacked, and subsection 8 thereof confers on the board of council of cities of the fourth class power "to provide the city with water or

erect or purchase or lease water works and maintain same or to make all necessary contracts with any person or corporation for such purposes, to erect hydrants, cisterns, fire plugs and pumps in the streets within or beyond the limits of the city.''

The only effect of subsection 36 is to extend the authority to provisions for light, power, heat and telephone service, matters not covered by the ordinance and therefore not involved in this controversy.

It is next urged that as subsection 34 of section 3490 of the Kentucky Statutes provides that the principal of said indebtedness as created shall be paid within a period of not more than twenty years from the time of contracting same, the ordinance calling such election is invalid because it provides that the bonds to be issued for said indebtedness are to be due and payable in eight series of from five to forty years. In this respect the statute is in conflict with the constitutional provision, and, as pointed out in the City of Winchester v. Nelson, 175 Ky. 63, the ordinance should conform to the Constitution, which is done in this case.

It is further urged that in order to provide a sinking fund for the payment of the interest and principal of said indebtedness it will be necessary to levy a tax in excess of the limit fixed by section 157 of the Constitution of the state of Kentucky. It is not shown by the evidence that the tax of 75c on each $100.00 of taxable property will not provide all the revenue needed for this purpose. The burden was on the appellant and the court cannot assume to the contrary. But if it does require a higher levy than 75c such levy is authorized for this purpose by section 159 of the Constitution. City of Winchester v. Nelson, *supra.*

Lastly, it is in evidence that the taxable property of the city of Morganfield as assessed for taxation just prior to the passage of this ordinance was the sum of $1,208,-110.00, and the proposed indebtedness is practically 10% of that sum. As section 158 of the Constitution limits the indebtedness that may be incurred by cities of this class to 5% of their assessed valuation it is urged that the Constitution is violated in this respect. It will be observed, however, that section 158, after providing the maximum of indebtedness which may be incurred by the different municipalities and certain exceptions thereto, continues, ''and thereafter it shall not exceed the limit unless in case

of an emergency, the public health or safety should so require.''

Samuels v. City of Clinton, 184 Ky. 97, was a case in which bonds had been voted for water works and an electric light plant. Clinton was a city of the fifth class and restricted by section 158 to an indebtedness of not exceeding 3% of the assessed valuation. The proposed bond issue exceeded 6% of such valuation. The condition of that city and the facts as regarded the water plant were practically the same as those in this case. The question was elaborately discussed and prior authorities collated and distinguished, the conclusion being that those facts showed an emergency within the meaning of the Constitution so far as the necessity of water works was concerned, but otherwise as to the electric light plant.

Later another election was held in which an indebtedness of like amount was voted to secure a water works plant. This was upheld, though far in excess of the constitutional limit, except in cases of emergency. Samuels v. City of Clinton, 188 Ky. 300. We can draw no distinction between the facts of that case and this.

We conclude that the ordinance and the election held thereunder were valid and that the bond issue should be upheld.

Such being the judgment of the chancellor it is affirmed.