## Hurst, et al. v. City of Millersburg, et al.

(Decided May 17, 1927.)

### Appeal from Bourbon Circuit Court.

Municipal Corporations.—Facts relative to necessity for waterworks system held insufficient to justify issuance of bonds by town of fifth class in excess of limitation authorized by Constitution, section 158, except in case of emergency affecting public health or safety.

DENIS DUNDON for appellants.

JOHN J. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Millersburg is a town of the fifth class. It has a population of 1,100 and an assessed valuation of property approximating $500.000. Under the provisions of section 158 of the State Constitution it cannot incur a bonded indebtedness in excess of 3 per cent. of the assessed valuation or $15,000, "unless in case of emergency the public health or safety should so require."

Proceeding on the assumption that an emergency existed within the meaning of the constitutional provision, supra, at the November, 1926, election, by a vote of 345 to 44, the town authorized an issue of $50,000 of bonds for the construction of a waterworks system. Certain citizens and taxpayers filed suit in the Bourbon circuit court to enjoin the municipal authorities from issuing these bonds. On final hearing, the circuit court denied the injunction, and plaintiffs appeal.

In addition to the facts above stated, it appears that Millersburg is an educational center; that the Millersburg Female College has handsome, commodious build-

ings, embracing almost a block in the center of the city, with an average attendance of something over 100 pupils; that the Bourbon county high school, with an enrollment of 340 pupils, is just outside the city limits as is the Millersburg Military Institute, a military school for boys with an attendance around 100; that all of the buildings mentioned are on high ground, much of which has a natural drainage through the city limits. It is also a high-class residential town, with many handsome homes and a fine citizenship. There are no sewers in the city, and the institutions named and many residences are provided with cesspools, while others use vaults and surface privies for their refuse. In rainy weather some of the cesspools overflow, causing much discomfort and annoyance. Sanitation experts testify that this condition is not only unsanitary and a nuisance, but is a menace to the health of the city; also percolations from refuse fecal matter reaches wells and cisterns and is calculated to produce a typhoid epidemic, though none such has occurred in the history of the town. It is further stated that, owing to the lack of water supply, the growth of the town is retarded and the development of the schools impeded. There are few septic tanks in the town. The evidence indicates that the drainage is not favorable to such tanks, but does not show that their installation is impracticable or that such installation would not relieve the dangerous conditions complained of.

Appellee relies on Samuels v. City of Clinton, 184 Ky. 97, 211 S. W. 567, in which it was held that there was an emergency within the constitutional sense, and Harris v. City of Morganfield, 201 Ky. 588, 257 S. W. 1032, in which the same conclusion was reached. But the facts in this case can easily be distinguished from the facts in those cases. In the Samuels case it appeared that a system of electric lights, waterworks, and sewerage had been operated by a private company in the city of Clinton for a period of 20 years. The citizens had not only discarded all other means of procuring water and avoiding waste, but had spent large sums in equipping their buildings and homes with suitable fixtures for the disposal of sewage in connection with the waterworks. At the time mentioned, the franchise had expired, and the water and light company was unwilling to continue longer in business. It was willing to sell its water and light plant to the city, but otherwise was preparing to dismantle its plant and sell its machinery and fixtures,

and the insurance companies were threatening, in the event this was done, to cancel their policies and withdraw their business from the city; certainly a very strong case and one which the court necessarily denominated an emergency, saying:

> "It is evident from the language of the court in that case (City of Marion v. Haynes) that it did not intend to hold that the necessity for a waterworks system could not, under any state of facts, arise to the dignity of an emergency, justifying the municipality to increase its indebtedness the per centum prescribed to be of general application to such a municipality under ordinary circumstances. It is apparent that the question of emergency must be determined in each case from the particular facts of the case."

A similar situation existed in the Morganfield case. The facts here are different from the facts in those two cases, and more similar to the facts appearing in City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79. In that case it appeared that the city of Marion had 1,100 people with an assessment of $743,000. It was proposing to issue bonds that would create an indebtedness of $45,000. The facts as set out in the opinion in that case were even stronger from a sanitation standpoint than they are in this one. It also appeared that the fire protection was insufficient by reason of the absence of a waterworks system as it is in this case, and the ordinance submitting the bond issue recited all these facts, and declared that an emergency existed within the constitutional sense. This court said:

> "And while we will not undertake to lay down a rule by which an emergency under section 158 of the Constitution is to be determined in every case, it is apparent that such an emergency is some sudden or unexpected occasion for action; some unforeseen occurrence, condition, or pressing necessity that requires immediate attention.
>
> "In treating the subject of taxation, 'the Federalist,' in No. 36, said: 'There are certain emergencies of nations, in which expedients, that in the ordinary state of things ought to be forborne, become essential to the public weal?' This language no doubt expresses the idea of the framers of our Con-

stitution, since they evidently meant that an emergency was some pressing necessity out of the ordinary state of things, which could only be remedied by the use of unusual expedients.

"It will not do to say that a municipal waterworks or a system of sewerage rises to the dignity of an emergency. On the contrary, they are luxuries, or perhaps necessities, of which the people of a small community might deprive themselves without any unusual or extraordinary danger. It might be otherwise in a large city, where there is a great aggregation of people residing; it certainly would not, however, be a necessity in the same sense to a country village. While waterworks and a drainage system may be very desirable, and no doubt are very much desired by appellant, their absence no more creates an emergency now than it has done at any time within the past ten or twenty years; and the declaration of the general council of the town in its ordinance, that an emergency existed, did not make it so. It must exist as a fact, to be determined under the evidence like any other fact.

"A leading author says: 'An exigency is an occasion of urgency and suddenness, where something helpful needs to be done at once; an emergency is more pressing, and naturally less common than an exigency; a crisis is an emergency, on the outcome of which everything depends.'

"While the situation at Marion may give rise to an exigency, it does not amount to an emergency."

It will be observed that the opinion in the City of Marion case was not criticised in either the Samuels case or the Harris case, but both were distinguished on the facts.

The adjacent schools with their problems, as well as the enterprise of these people in seeking the development of the town and of their institutions, appeal strongly to the court. But we are unable to distinguish this case from Marion v. Haynes as to the size and congestion of the town, the sanitary conditions, and the need of a waterworks system. To uphold appellees' contention, we must overrule that case and give a new meaning to the word "emergency." This would enable every incorporated town in the state to incur an unlimited indebtedness for the construction of waterworks, because it is no

doubt true that none of them has perfect sanitation and that the difference in their condition is one of degree rather than in basic facts, and each one could show some special cause for such action. We do not feel justified in doing this.

Wherefore the judgment is reversed, and cause remanded, for proceedings consistent with this opinion.

Whole court sitting.

## DISSENTING OPINION BY CHIEF JUSTICE CLAY.

Realizing that the protection of the public health is one of the most important functions of municipal government, the makers of the Constitution, in fixing the debt limit of the various classes of municipalities, did not declare that the limit should never be exceeded, but took the precaution to provide that it should not be exceeded "unless in case of emergency the public health or safety should so require." In determining whether or not an emergency exists, we should not be guided by the standard of pioneer days, but should look at the question through the eyes of modern science, and give some heed to the voice of those who have made the question of public health a lifetime study. The only way to protect the public health is to take preventive measures. An emergency is simply a pressing necessity, and it will not do to say that no emergency exists until after an epidemic has actually occurred. On the contrary, we should hold that a case of pressing necessity is presented whenever the surrounding conditions are such as to jeopardize the public health.

Here a large number of persons live in a small area. Only cesspools and tanks are used for the disposal of sewerage. In some instances these cesspools and tanks are used by many persons. Because of the contour of the land, the flowage and seepage are through the city of Millersburg. In the opinion of the sanitary experts, this condition is a constant menace to the health of the people. For these reasons, I am constrained to the view that there exists under the Constitution an emergency entitling the city to issue bonds in excess of the debt limit of 3 per cent., and therefore cannot agree with the majority opinion. I am authorized to say that Judge Logan concurs in this dissent.