# Fiscal Court of Estill County v. Debt Commission of Kentucky et al.

Jan. 21, 1941.

H. E. Hay for appellant.

Alfred Holman and A. E. Funk, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

As of December 31, 1940, there were outstanding and unpaid, principal and interest, $316,645 of road and bridge bonds of Estill County. There was available in the sinking fund for interest $20,000, so .that the net debt was $296,645. A substantial part is in default. Because of the decrease in the assessed value of the property the yield from the tax levy of 20 cents on the $100 made to finance the bonds is not enough by about $1,500 to pay even the annual interest. The bonds are of two issues. Originally one was for $240,000, voted in 1922, and the other for $115,000, voted in 1927. Each issue bears 5 per cent interest. The county has had on deposit for nearly fourteen years $55,000 of the proceeds of the last issue. By and with the consent of not less than 75 per cent of the holders of those bonds, it is proposed to use the $55,000 to purchase and retire that

amount of the issue of 1927 and to refund the balance of the debt with 4 per cent serial bonds maturing in 1 to 38 years. It is made to appear that the proposed refinancing can be taken care of with the 20 cent tax on the present property values and that the debt situation cannot be handled more advantageously.

Pursuant to the conditions of Section 938q-1 et seq., Statutes Supp. 1939, the county applied to the State Local Finance Officer for his approval of the issuance of the refunding bonds. He and, subsequently, the County Debt Commission declined to approve the issue. The Franklin Circuit Court affirmed their decision and the county appeals from its judgment. The action of the commission, and doubtless of the circuit court, was rested upon a memorandum opinion delivered by a judge of this court on a motion to dissolve a temporary injunction, to which we shall later refer, and upon Section 4307 of the Statutes fixing the maximum maturity of road and bridge bonds at 30 years. We consider the two grounds in inverse order.

Section 157a of the Constitution authorizing the issuance of road and bridge bonds stipulates no time in which they shall mature. Section 4307 of the Statutes putting that constitutional authority in effect prescribes that such bonds shall "run not less than five nor more than thirty years." Section 159 of the Constitution is as follows:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

Thus there is presented the question of whether the General Assembly acted within its power in limiting the life of bonds of this class to 30 years when the Constitution declares that a county shall provide for the payment of any indebtedness at issuance "within not more than forty years from the time of contracting the same." We have four primary cases relating to the power of the Legislature to reduce this and similar constitutional limitations.

In City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040, 1044, the court declared void that part of Section 3490-34 of the Statutes which undertook to require the council of a city of the fourth class to establish a sinking fund for the payment of the principal of its bonds "within a period of not more than twenty years from the time of contracting the same." The ruling was adhered to in Harris v. City of Morganfield, 201 Ky. 588, 257 S. W. 1032. In Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192, we held unconstitutional part of an act (yet carried as Section 186c-8 in the Statutes) which directed that a county or other taxing district in issuing bonds for any purpose provide that a certain portion should fall due annually and be paid so that at maturity of the issue all of the bonds would have been paid off and cancelled. That ruling was adhered to in two cases coming up about the same time, namely, Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370, and Wheeler v. Board of Commissioners of the City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740.

On the other hand, in Clere v. Board of Education of the City of Ashland, 211 Ky. 130, 277 S. W. 335, we held constitutional an act (Section 3235a-28, Statutes, subsequently repealed) restricting the bonded debt of a city of the second class for school purposes to 2 per cent of the value of the taxable property, notwithstanding Section 158 of the Constitution provides a debt limit of 10 per cent for cities of that class. We regarded the limitation of the Constitution as establishing only a maximum beyond which the Legislature could not go, and as a municipality is the creature of the Legislature it was thought competent for that body to fix a limit less than the constitutional maximum. Following that decision, in County Debt Commission v. Morgan County, 279 Ky. 476, 130 S. W. (2d) 779, we held valid the provision in the County Debt Act which forbids a county to incur an indebtedness in excess of one-half of one per cent of the taxable property without approval of the commission, although Section 158 of the Constitution permits a county to create a debt not exceeding 2 per cent of that value.

The same question was presented in each of those cases that we have here, namely, is it competent for the Legislature to fix a maximum time limit for the indebt-

edness of a local taxing district less than the maximum stated in the Constitution? The identical statute now before us was involved in the Boyle County case. Concerning the conflict with the Constitution and the power of the Legislature, it is there said [245 Ky. 27, 53 S. W. (2d) 194]:

"The limitation is mandatory, and is addressed to the Legislature as well as to the local legislative bodies. It is not competent for the General Assembly to nullify the plan of financing authorized by the Constitution, or to lessen the range of discretion left to the local governments in such matters. City of Winchester v. Nelson, 175 Ky. 63-72, 193 S. W. 1040; Harris v. Morganfield, 201 Ky. 588, 257 S. W. 1032. The cities, counties, and taxing districts may provide for the maturity of their obligations as may be deemed best, within the period fixed by the Constitution, but the Legislature may not impose further restrictions on such subordinate governing authorities incompatible with the policy established by the supreme law."

In the Winchester case we construed Section 157 (relating to the tax rate), Section 158 (relating to the amount of the debt), and Section 159 (relating to time) as not grants of power but as limitations placed upon both the Legislature and the local taxing district alike and that the Legislature did not have the power to lessen them. It is pointed out that if it could change the time for maturity of bonds of the local district from 40 to 20 years it could, as well, abridge the time to even one year and thereby annul the constitutional provision, which, of course, it has no right to do.

A reconsideration of the principle leads us to adhere to the ruling of that case and Fox v. Boyle County, supra, and to overrule Clere v. Board of Education of the City of Ashland, supra, and County Debt Commission v. Morgan County, supra, to the extent that they announce a diffferent principle. However, in relation to the latter case, it may be stated that it was competent for the Legislature to provide for the approval by the State Local Finance Officer, the County Debt Commission, and the courts, as in Section 938q-4, Statutes Supp. 1939, as a prerequisite to contracting a debt exceeding one-half of one per cent of the value of its tax-

able property because the legislative power to regulate procedure does not offend constitutional provisions relating to debt limitations.

We are of opinion, therefore, that it was within the power of Estill County to fix 38 years as the maturity of the last of the series of bonds, and that the approval of the County Debt Commission should not be withheld on this account.

In submitting to the people the proposition of voting bonds in 1927, it was stipulated that the proceeds should be used to build roads from the Jackson County line to Irvine and from Irvine to the Clark County line. The latter road was built but the former was not. There remained in the treasury $55,000 available for the construction of that road. In 1936 the fiscal court proposed to use this money to buy bonds from which it came and to hold the same until such time as the State Highway Commission ordered the construction of the road and then to sell them and use the proceeds therefor. The right to do this was questioned. On a motion for a temporary injunction in a case pending in the Estill Circuit Court, styled Rice McGee, et al. v. The Estill Fiscal Court, Judge Rees, with other members of this court concurring, ruled in a memorandum opinion that such investment could be made upon the lowest bid after due advertising for offers (in order to avoid favoritism), but that such acquisition would not extinguish the obligation represented by the bonds. However, it appears that the investment was not made and the money has remained on deposit with only nominal interest accruing to the county.

It appears in this record that since 1927, the State Highway Department from time to time has denied the request of Estill County to construct the road. According to the evidence, when the bonds were issued it was the policy of the State, through the Highway Commission, to require counties to pay one-half of the cost of road construction. That policy no longer prevails, and the State, though authorized to receive donations from counties or others, must bear the cost of constructing State roads, of which that involved is one. Section 4356t-5, Kentucky Statutes. The county itself has no right or power to construct the road. The conditions having so materially changed, and the State Highway

Commission for fourteen years having consistently declined to accept the money and construct the road, it can be reasonably said that the project has been abandoned,—if not altogether, certainly, according to the terms contemplated when the bonds were issued and sold. The exigencies of the situation make it a reasonable and fair disposition of the money to reduce the debt by buying the bonds and cancelling them. If that be not done, it appears that the refinancing of the county's debt structure cannot be had and the ever increasing deficit and continuing default in the payment of its obligations must go on indefinitely. Extraordinary conditions sometimes require courts of equity to afford extraordinary and unusual remedies. Such is this case.

We are of opinion, therefore, that the judgment should be reversed and the County Debt Commission be directed to approve the bonds in so far as their refusal rests upon the two grounds stated.

Judgment reversed.

Whole court sitting, except Judge Perry.