## Estill County v. Price, County Treasurer, et al.

June 20, 1941.

Hafford E. Hay and Alfred Holman for appellants.

E. B. Rose, of Beattyville, A. E. Funk, Assistant Attorney General, and Ben H. Scott for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

In Fiscal Court of Estill County v. Debt Commission of Kentucky et al., 286 Ky. 114, 149 S. W. (2d) 735, 737, decided January 21, 1941, we gave approval to a plan of refinancing and the issuance of refunding bonds by Estill County. The character of the refinancing and of the refunding bonds is fully set out in that opinion, the concluding paragraph of which is:

> "We are of the opinion, therefore, that the judgment should be reversed and the County Debt Commission be directed to approve the bonds in so far as their refusal rests upon the two grounds stated."

That appeal was from the action of the circuit court in sustaining the refusal of the County Debt Commission to approve the refinancing plan. On April 27, 1940, prior to the application to the County Debt Commission for approval of the plan, the appellees, J. D. Webb and others, had filed an action to enjoin the fiscal court, the county treasurer and the county depository from using any portion of the $55,000 fund mentioned in the opinion in the proposed plan of refinancing and to compel the payment of the $55,000 to the State Highway Commission to be used in construction of the road from the Jackson County line to Irvine. Before any decision in the latter action the application for approval of the refinancing plan was made to the County Debt Commission, culminating in the rendition of the above mentioned opinion. Following the issuance of the mandate, Estill County filed an action in equity against the county treasurer, the county judge and the county depository by which it sought a mandatory injunction commanding the treasurer to expend the $55,000 in payment for road and bridge bonds presented to him under the refinancing plan as approved in the opinion and to require the county judge to execute the refunding bonds when presented to him.

The two actions were consolidated and on final hearing the chancellor enjoined the use of any portion of the $55,000 in the proposed refinancing plan and directed

the payment of the fund to the State Highway Commission. It may be added that after the rendition of the opinion referred to the Highway Commission filed in the action of Webb et al. v. Estill County Fiscal Court et al., an intervening petition claiming the fund by virtue of a contract between it and the county pursuant to which the Highway Commission expended a large amount of money in construction of the road from the Jackson County line to Irvine. The appeal in the consolidated cases is from the chancellor's judgment directing the payment of the fund to the Highway Commission.

It is urged, first, with great insistence, that the opinion of this court above mentioned was conclusive of the matter and that it remained only for the chancellor to follow the mandate of this court pursuant to that opinion and direct the expenditure of the $55,000 for the purchase of the old bonds. In this insistence we see no merit since the Highway Commission was not a party to the appeal in which that opinion was rendered. If the Highway Commission is entitled to the fund, the appeal involving an ex parte application to the County Debt Commission for the approval of the financing plan in no way concluded the Highway Commission from asserting its rights to the fund, which it did by filing an intervening petition in the action by Webb and others to compel the payment of the fund to the Commission. The effect of the holding, as indicated by the concluding paragraph of the opinion, was merely to direct the County Debt Commission to approve the bonds in so far as the refusal to do so by that body rested upon the two grounds discussed in the opinion. It remains, therefore, only to determine whether or not the facts justify the chancellor's judgment in holding that the Highway Commission was entitled to the fund.

As indicated in the opinion on the appeal referred to, the $55,000 is a part of a $115,000 bond issue voted in 1927 for the construction of roads from the Jackson County line to Irvine and from Irvine to the Clark County line. The latter road was built but the former was not and the $55,000 was therefore available for the construction of the former road. It was recited in the opinion that the record then before the court showed that it could reasonably be said that the project of building the road from the Jackson County line to Irvine had been

abandoned—if not altogether, certainly, according to the terms contemplated when the bonds were issued and sold. The record before us, however, presents an entirely different situation and establishes the following state of facts:

On April 7, 1931, the Estill Fiscal Court entered an order by which the county judge was directed to call upon the Highway Commission and tender the fund in question for construction of the road from Irvine to the Jackson County line (it may be added that this order did not appear in the record involved on the other appeal). This order was never revoked or set aside. Prior to July 1, 1938, the county judge, pursuant to the authority of this order, agreed with the Highway Commission that the $55,000 would be turned over to it if the Commission would construct two bridges serving the road from Irvine to the Jackson County line — the road had been previously surveyed and most of the rights-of-way obtained by the county. The Highway Commission accepted the county judge's proposal and let contracts for the two bridges. One of these bridges is across the Kentucky River at the town of Irvine and is on the route from Irvine to the Jackson County line although it also is on the road from Irvine to Richmond, a much more highly traveled road. This bridge was constructed by the Commission at a cost of approximately $300,000. The other bridge is across Station Camp Creek and is on the surveyed route from Irvine to the Jackson County line. This bridge has almost been completed but a span at each end remains uncompleted. To complete these spans will require the expenditure of approximately $18,000. The record is such as to leave no doubt that the Highway Commission would never have undertaken the construction of the bridges but for the agreement of the county judge that the $55,000 would be paid to the Commission, an agreement that he unquestionably had the right to make since the fiscal court order authorized him to tender the money to the Commission for the construction of the road. When the Highway Commission ascertained that the fiscal court had refused to turn the fund over to it, the work on the Station Camp Creek bridge was abandoned.

It further appears that the Highway Commission will, if the $55,000 fund is paid to it, immediately expend

out of this fund the $18,000 necessary to complete the unfinished bridge and will expend the remainder of the fund, together with federal aid funds available to match it, in the construction of the road. The State Highway Commission and the State Highway Engineer have always been, and are now, unwilling to commit the Commission to the immediate construction of the entire road but it appears from Mr. Cutler's testimony that the road will eventually be completed and that the contribution of this fund will expedite its construction.

It is most earnestly insisted that the bridge across the Kentucky River at Irvine was not contracted for as a part of the construction of the road in question and that it was built only as a part of the Irvine-Richmond road but it clearly appears in the record that the bridge is also a part of the road in the controversy and that it and the Station Camp Creek bridge, also on the road in question, were constructed by the Commission only because of the county's agreement to pay the $55,000 to the Commission. The bridges are a part of the road construction. The $55,000 is a part of the bond issue voted "for the purpose of building roads and bridges from the Jackson County line to Irvine" so that unquestionably the money will have been expended for the purpose for which it was voted when it is turned over to the Highway Commission. It is true that when the bond issue was voted it was the policy of the State to require counties to pay one-half of the cost of road construction and that this policy no longer prevails. Nevertheless, counties are authorized to make donations to the State which must bear the cost of constructing state roads. Section 4356t1-15, Kentucky Statutes.

Since the Highway Commission has expended large amounts in the construction of the road pursuant to the agreement of the county to donate the $55,000 towards this construction, a project for which the money was voted, we conclude that the chancellor correctly ordered the fund paid to the Highway Commission.

Judgment affirmed.